# Exhibit C



**FOXWORTH LAW GROUP**
Roderick L. Foxworth, Jr., Esquire
Attorney I.D. No. 326960
Two Logan Square
100 N. 18th Street, Suite 303
Philadelphia, PA 19103
Phone: (445) 248-9911
Direct: (445) 215-4061
Fax:    (215) 754-1794
Email: rfoxworth@foxworthlawgroup.com
*Attorney for Plaintiff*

## IN THE COURT OF COMMON PLEAS, PHILADELPHIA COUNTY, PENNSYLVANIA
### CIVIL TRIAL DIVISION

| | |
|---|---|
| VERONICA HALL, | JULY TERM, 2025 |
| Plaintiff, | No. 0568 |
| v. | |
| TEMPLE HEALTH - CHESTNUT HILL HOSPITAL and SEIU HEALTHCARE PENNSYLVANIA, | |
| Defendants. | |

## PRAECIPE TO REINSTATE COMPLAINT

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly reinstate the attached Complaint in the above-captioned matter.

Date:   September 15, 2025

**FOXWORTH LAW GROUP**

/s/ Roderick L. Foxworth, Jr.
Roderick L. Foxworth, Jr., Esquire
*Attorney for Plaintiff*

Case ID: 250700568

# IN THE COURT OF COMMON PLEAS, PHILADELPHIA COUNTY,
## CIVIL TRIAL DIVISION

VERONICA HALL,

        Plaintiff,

        v.

TEMPLE HEALTH - CHESTNUT HILL
HOSPITAL and SEIU HEALTHCARE
PENNSYLVANIA,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

JULY TERM, 2025

No. 0568

Filed and Attested by the
Office of Judicial Records
15 JUL 2025 10:40 am
S. RIVINGTON

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107-2911
Telephone: (215) 238-6333

### AVISO

Lo(a) han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio, vaya en persona o llame por teléfono a la oficina cuya dirección se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociación de Licenciados de Filadelfia
Servicio de Referencia E Información Legal
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107-2911
Teléfono: (215) 238-6333

Case ID: 250700568

**FOXWORTH LAW GROUP**
By: Roderick L. Foxworth, Jr., Esquire
Attorney I.D. No. 326960
Two Logan Square
100 N. 18th Street, Suite 303
Philadelphia, PA 19103
Phone: (445) 248-9911
Direct: (445) 215-4061
Fax:    (215) 754-1794
Email: rfoxworth@foxworthlawgroup.com
*Attorney for Plaintiff*

---

## IN THE COURT OF COMMON PLEAS, PHILADELPHIA COUNTY, PENNSYLVANIA
## CIVIL TRIAL DIVISION

|  |  |
|---|---|
| VERONICA HALL, | : |
| | :     JULY TERM, 2025 |
| Plaintiff, | : |
| | :     No. 0568 |
| v. | : |
| | : |
| TEMPLE HEALTH - CHESTNUT HILL | : |
| HOSPITAL and SEIU HEALTHCARE | : |
| PENNSYLVANIA, | : |
| | : |
| Defendants. | : |

## COMPLAINT

### PARTIES

3.      Plaintiff, Veronica Hall ("Ms. Hall" or "Plaintiff"), is an adult individual residing at

1201 W. Airdrie Street, Apt. B Front, Philadelphia, PA 19140.

4.      Defendant Temple Health - Chestnut Hill Hospital ("Temple Health" or "the

Hospital") is a non-profit healthcare organization with its principal place of business located at

8835 Germantown Avenue, Philadelphia, PA 19118. Temple Health is a subsidiary of Temple

University Health System and employs between 201-500 employees.

5.      Defendant SEIU Healthcare Pennsylvania ("SEIU" or "the Union") is a labor union

with its principal place of business located at 1500 N. 2nd Street, Harrisburg, PA 17102. SEIU is the collective bargaining representative for certain employees at Temple Health, including phlebotomists.

6.    At all relevant times, Ms. Hall was employed as a phlebotomist by Temple Health from September 2022 until her termination on September 19, 2024. As a phlebotomist, she was covered by the collective bargaining agreement between Temple Health and SEIU Healthcare Pennsylvania, effective January 1, 2023, through January 31, 2025.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action as it involves claims arising under Pennsylvania law, including wrongful termination in violation of public policy and breach of contract. The amount in controversy exceeds the jurisdictional threshold of this Court.

8.    Venue is proper in Philadelphia County as the Defendant Temple Health - Chestnut Hill Hospital conducts business and maintains its principal place of operation at 8835 Germantown Avenue, Philadelphia, Pennsylvania 19118, the underlying employment relationship and termination occurred in Philadelphia County, and Plaintiff resides in Philadelphia County, Pennsylvania.

## STATEMENT OF FACTS

9.    Ms. Hall began her employment with Temple Health - Chestnut Hill Hospital as a phlebotomist in September 2022. Her job duties included drawing blood from patients, working independently for 148 beds, wheeling supplies on a cart from room-to-room, applying rubber tourniquets to arms, using butterfly needles, filling vacuum tubes with blood samples, and alternating between outpatient lab work and collecting samples from patients on hospital floors.

10.     As a phlebotomist employed by Temple Health, Ms. Hall was covered by the collective bargaining agreement between Temple Health and SEIU Healthcare Pennsylvania, effective January 1, 2023, through January 31, 2025. This agreement provided that employees could only be discharged for "just cause" as set forth in Article 19. (A true and correct copy of the collective bargaining agreement is attached hereto as Exhibit "1").

8.      In March 2023, Ms. Hall began experiencing wrist pain in her right hand, which is her dominant hand, as a result of the repetitive work-related activities required in her position as a phlebotomist.

9.      On March 6, 2024, Ms. Hall reported her work-related injury to Temple Health's Human Resources department and saw an orthopedic doctor at Temple Orthopaedics & Sports Medicine. The orthopedic doctor provided a work note restricting Ms. Hall's right wrist use and placing her on medical leave until an MRI could be completed.

10.     On March 25, 2024, the MRI revealed moderate-severe extensor compartment 4 tenosynovitis and high-grade partial thickness tendon tearing in Ms. Hall's right wrist.

11.     On April 17, 2024, Ms. Hall received a return to work note clearing her to return to full-duty work on April 22, 2024.

12.     Ms. Hall returned to work on April 22, 2024, but continued to experience significant pain in her right wrist and hand. Despite her ongoing pain and discomfort, she attempted to perform her job duties as a phlebotomist.

13.     On May 16, 2024, Ms. Hall worked her last day at Temple Health due to the severity of her work-related injury and pain.

14.     On May 17, 2024, Ms. Hall underwent surgery at Temple University Hospital for her work-related injury. The procedure, performed by Dr. Joseph Thoder, was a

tenosynovectomy/tenolysis of the right 4th extensor compartment of her wrist. The surgical findings confirmed extensor tenosynovitis with synovitis and an intratendinous mass in the extensor tendon to the third finger.

16.     Following her surgery, Ms. Hall was placed on medical leave and was required to keep her surgical dressing clean and dry, elevate her hand above heart level when resting, and was prescribed pain medication. She was unable to perform the essential functions of her job as a phlebotomist due to her surgical recovery and ongoing limitations.

17.     On August 29, 2024, Ms. Hall completed a physical capabilities worksheet that documented severe functional limitations, including her inability to lift, carry, push, pull or twist, restrictions to lifting only 10 pounds or less occasionally, and her inability to perform simple grasping, pushing/pulling, or fine manipulation with her right hand.

18.     On September 19, 2024, Ms. Hall contacted Donna Monaco, Temple Health's HR Absence Management Specialist, to inform her that she needed additional medical treatment for her work-related injury. Ms. Monaco submitted both short-term disability and medical leave requests on Ms. Hall's behalf.

19.     Later that same day, September 19, 2024, while Ms. Hall was on approved medical leave for her work-related injury, Ms. Monaco called Ms. Hall and informed her that she was being terminated from her employment.

20.     Following the phone call, Ms. Monaco sent Ms. Hall an email claiming that Ms. Hall had stated she "could not come back to work for a very long time" and that she had resigned from her position. Ms. Hall explicitly denies making any such statements and denies that she resigned from her position.

21.     In the termination communication, Temple Health stated that Ms. Hall was being

terminated because she was "unable to return to work, with or without reasonable accommodation" and that they "cannot provide you with an indefinite leave of absence." Temple Health failed to engage in any interactive process to determine whether reasonable accommodations could be provided to allow Ms. Hall to return to work.

22.     Temple Health's termination of Ms. Hall occurred while she was on approved medical leave for a work-related injury and without just cause as required under the collective bargaining agreement. Upon information and belief, no other male employees or white female employees were terminated while out sick or injured on medical leave during Ms. Hall's employment period.

23.     On March 10, 2025, Ms. Hall filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging race, color, sex, and disability discrimination, as well as retaliation, in connection with her termination while on medical leave.

**COUNT ONE (1)**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(Plaintiff v. Temple Health - Chestnut Hill Hospital)**

24.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 23 as if fully set forth herein.

25.     Pennsylvania recognizes a cause of action for wrongful discharge when the termination violates a clear mandate of public policy, including the public policy against retaliation for filing or pursuing workers' compensation claims.

26.     Ms. Hall suffered a work-related injury to her right wrist and hand in the course and scope of her employment with Temple Health, which entitled her to workers' compensation benefits under Pennsylvania law.

27.     Ms. Hall filed a workers' compensation claim for her work-related injury and

sought appropriate medical treatment, including surgery, for her condition.

28.     Ms. Hall's pursuit of workers' compensation benefits and medical treatment for her work-related injury constituted protected activity under Pennsylvania's Workers' Compensation Act.

29.     Temple Health terminated Ms. Hall's employment on September 19, 2024, while she was on approved medical leave for her work-related injury, in retaliation for her filing and pursuit of workers' compensation benefits.

30.     Temple Health's termination of Ms. Hall while she was recovering from a work-related injury and pursuing workers' compensation benefits violates the clear mandate of Pennsylvania public policy that protects employees from retaliation for exercising their rights under the Workers' Compensation Act.

31.     As a direct and proximate result of Temple Health's wrongful termination, Ms. Hall has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, and other consequential damages.

**COUNT TWO (2)**
**BREACH OF COLLECTIVE BARGAINING AGREEMENT**
**(Plaintiff v. Temple Health - Chestnut Hill Hospital)**

32.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.     At all relevant times, there existed a valid and binding collective bargaining agreement between Temple Health - Chestnut Hill Hospital and SEIU Healthcare Pennsylvania, effective January 1, 2023 through January 31, 2025.

34.     Ms. Hall, as a phlebotomist employed by Temple Health, was covered by and entitled to the protections afforded under the collective bargaining agreement.

35.    Article 19 of the collective bargaining agreement provides that Temple Health may discharge employees only for "just cause."

36.    Ms. Hall had completed her probationary period and was entitled to the just cause protections under the collective bargaining agreement at the time of her termination.

37.    Temple Health breached the collective bargaining agreement by terminating Ms. Hall's employment on September 19, 2024, without just cause.

38.    Ms. Hall's termination while on approved medical leave for a work-related injury, without any disciplinary infractions or performance issues, and without engaging in the interactive process for reasonable accommodations, does not constitute just cause under the collective bargaining agreement.

39.    Temple Health's termination of Ms. Hall constituted a material breach of the collective bargaining agreement.

40.    As a direct and proximate result of Temple Health's breach of the collective bargaining agreement, Ms. Hall has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, and other consequential damages.

**COUNT THREE (3)**
**BREACH OF DUTY OF FAIR REPRESENTATION**
**(Plaintiff v. SEIU Healthcare Pennsylvania)**

41.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

42.    SEIU Healthcare Pennsylvania was the exclusive bargaining representative for Ms. Hall and other employees in her bargaining unit at Temple Health.

43.    As the exclusive bargaining representative, SEIU owed Ms. Hall a duty of fair representation in the administration and enforcement of the collective bargaining agreement.

44.     The duty of fair representation requires that a union represent bargaining unit members without hostility or discrimination, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

45.     Ms. Hall's termination while on medical leave for a work-related injury without just cause constituted a clear violation of the collective bargaining agreement that should have been grieved and challenged by SEIU.

46.     Upon information and belief, SEIU failed to properly investigate Ms. Hall's termination, failed to file a grievance challenging her wrongful termination, and/or failed to adequately represent her interests in connection with her termination.

47.     SEIU's conduct in failing to properly represent Ms. Hall in connection with her wrongful termination was arbitrary, discriminatory, and/or in bad faith, constituting a breach of its duty of fair representation.

48.     As a direct and proximate result of SEIU's breach of its duty of fair representation, Ms. Hall has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, and other consequential damages.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants as follows:

A. Against Defendant Temple Health - Chestnut Hill Hospital for compensatory damages, including but not limited to back pay, front pay, lost wages, lost benefits, and other economic damages resulting from Plaintiff's wrongful termination;

B. Against Defendant Temple Health - Chestnut Hill Hospital for non-economic damages, including emotional distress, pain and suffering, and loss of enjoyment of life;

C. Against Defendant SEIU Healthcare Pennsylvania for compensatory damages resulting

from its breach of the duty of fair representation;

      D. Pre-judgment and post-judgment interest on all monetary awards;

      E. Reasonable attorney's fees and costs of suit;

      F. Such other relief, legal and equitable, as this Court deems just and proper.

Date:  August 11, 2025                 Respectfully Submitted,

                                     /s/ Roderick L. Foxworth, Jr.
                                     Roderick L. Foxworth Jr., Esquire
                                     *Attorney for Plaintiff*

Docusign Envelope ID: 72EF58D0-D144-4A10-AA26-DDE9080FE746

## VERIFICATION

I, Veronica Hall, hereby verify that I am the Plaintiff in this action, and I have read the foregoing Complaint with the proper Notice to Defend, and the statements made therein are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Date:  8/11/2025

DocuSigned by:

Veronica L Hall

Veronica Hall

Case ID: 250700568

# EXHIBIT "1"

## MEMORANDUM OF AGREEMENT

### December 23, 2022

TUHS and SEIU Healthcare PA agree to the following terms governing the employment of bargaining unit employees represented by the SEIU at Chestnut Hill Hospital contingent on the closing of the pending transaction for TUHS to become the operating partner of Chestnut Hill Hospital.

### AGREEMENT

THIS AGREEMENT, made and entered into as of this 1st day of January, 2023, between Chestnut Hill Hospital, located at Germantown Pike, Chestnut Hill, Pennsylvania (hereinafter referred to as the "Hospital" or "Employer"), a subsidiary of by Temple University Health System ("TUHS", which along with its subsidiaries and/or affiliates are, collectively, "the Company" or "Temple"), and SEIU Healthcare Pennsylvania, CTW, CLC (hereinafter referred to as the "Union"), acting herein on behalf of those employees of said Hospital who are now and/or are hereinafter, during the term of this Agreement, employed in positions which are in the bargaining unit(s) described and set forth in Article 1-Recognition, below (which employees are hereinafter collectively designated and referred to in this Agreement as "the employees").

### WITNESSETH

WHEREAS, the Employer recognizes the Union as the collective bargaining representative for the employees covered by this Agreement, as hereinafter defined; and

WHEREAS, the Employer has as its vision to be the leader in providing and managing quality health care services to meet our community's health care needs in a compassionate and collaborative manner; and

WHEREAS, it is the intent and purpose of the parties hereto, the Hospital and the Union, that they shall for purposes of this Agreement, at all times promote, above all, the interests of the Hospital's patients, the attainment and maintenance of excellent quality patient care and full operational efficiency of the Hospital, and the avoidance of any interruptions or interference with services to patients.

NOW THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto have set forth their full and complete Agreement regarding rates of pay, hours of work, and other terms and conditions of employment for the employees covered hereby, and hereby agree as follows:

### ARTICLE 1 - RECOGNITION

**Section 1**     The Hospital recognizes the Union as the collective bargaining representative in the collective bargaining unit which was certified by the National Labor Relations Board in Case No. 04-RC-106084, as follows:

Case ID: 250700568

a.     Included: All full-time, regular part-time and per diem (who work an average of four (4) or more hours per week) service and maintenance employees employed by the Employer at its facility located at 8835 Germantown Avenue, Philadelphia, PA in the following classifications: billing clerk, central sterile technician, central processing technician, certified nursing assistant, electroneurodiagnostic (EEG) technician, electrocardiogram (EKG) technician, emergency room (ER) technician, intensive care unit (ICU) monitor technician, progressive care unit (PCU) monitor technician, emergency room (ER) monitor technician, lab aide/phlebotomist, mental health worker/technician, nursing assistant, patient sitter, phlebotomist receptionist, transporter, and unit secretary.

b.     Excluded: All other employees including business office clerical employees, technical employees, skilled maintenance employees, professional employees, confidential employees, physicians, registered nurses, nurse and/or clinical educators or coordinators, clinical nurse specialists, clinical coordinators, clinical supervisors, case managers/utilization review and/or discharge planners, nurse practitioners, accounting or auditing RNs, infection control/employee health nurses, risk management/performance improvement and/or quality assurance or quality management nurses, managers, guards and supervisors as defined in the Act.

**Section 2**     This Article 1 - Recognition, shall not be interpreted to limit non-bargaining unit employees from performing work also historically performed by employees in the bargaining unit, as long as bargaining unit work is not the non-bargaining unit employee's primary duty. This Section is not intended to limit the use of agency employees to supplement the workforce as needed.

## ARTICLE 2 - MANAGEMENT RIGHTS

**Section 1**     The Hospital retains the exclusive right to manage the Hospital, including specifically the managerial prerogatives to direct, control and schedule the Hospital's operations and workforce and to make any and all decisions affecting the Hospital's business, whether or not specifically mentioned herein and whether or not heretofore exercised, excepting only as those rights and prerogatives are specifically limited or abridged by the express written provisions of this Agreement. Such managerial rights and prerogatives include, but are in no way limited to, the sole and exclusive rights to determine and apply its organizational structure at any time, which inherently includes its right to hire, promote, layoff, recall, assign, transfer, suspend, discharge and discipline employees; select and determine the number of its employees, including the number assigned to any particular work; increase or decrease that number; direct and schedule the workforce; determine the location and type of operation including the methods, procedures, materials and operations to be utilized or to discontinue their performance by employees of the Hospital in whole or in part and/or to subcontract the same; hire or contract with per diem, temporary, agency or non-bargaining unit employees and utilize volunteers; determine and schedule when overtime shall be worked; install or remove equipment; transfer or relocate any or all of the operations or business to any location, or discontinue such operations, by sale or otherwise, in whole or in part, at any time; establish, increase or decrease the number of work shifts, the duration of any shift, and their starting and ending times; determine the work duties of employees; promulgate, revise, post and enforce rules and regulations governing the conduct and performance of employees; select supervisory employees; train employees; establish, maintain, revise or discontinue Company and/or Hospital functions, programs and standards of service,

Case ID: 250700568

including Continuous Quality Improvement (CQI) programs and processes; determine the Hospital's overall budget and the budget for any specific department or program; determine its technology and equipment and the utilization thereof; establish, change, combine or abolish job classifications and determine qualifications; determine reasonable work performance levels and standards of performance of the employees; and in all respects carry out, all of the ordinary and customary functions of management. The above set forth management rights are by way of example, but not by way of limitation and the fact that any particular management right is not listed above shall not be deemed or construed as a waiver of any such right.

**Section 2**    The Hospital shall have the right to assign any of the work required by new technology, equipment or processes to any division, department or location of the Company including divisions, departments or locations not covered by this Agreement. The Company shall have the sole right to determine what constitutes such new technology, equipment or processes. The Hospital will advise the Union of any substantial changes in job duties caused by technological changes and, upon written request by the Union shall meet and discuss same with the Union.

**Section 3**    Failure to exercise any of the functions, whether or not expressly stated herein, shall not constitute a waiver thereof.

**Section 4**    Nothing contained in this Agreement shall prevent the Hospital from designing, establishing, implementing or discontinuing any program, process or function already undertaken by the Hospital or hereafter to be undertaken by the Hospital.

**Section 5**    The foregoing statement of the rights of management and of Hospital functions is not all inclusive, but indicates the type of matters or rights which belong to and are inherent in management, and shall not be construed in any way to exclude other Hospital functions not specifically enumerated.

**Section 6**    In any dispute over the Hospital's exercise of its managerial rights or prerogatives retained under this Article, the standard to be applied by any arbitrator in reviewing such an exercise shall be determination by clear and convincing evidence that such exercise exceeded the Hospital's authority under this article. Unless that burden is met, the Hospital's actions will not be disturbed.

## ARTICLE 3 - UNION SECURITY

**Section 1**    Effective upon ratification, it shall be a continuing condition of employment with the Employer that all employees covered by this Agreement shall be and remain members in good standing in the Union or pay a representation fee to the Union to the extent permitted by law. For the purposes of this Article, an employee shall be considered a member of the Union in good standing if he tenders her or his periodic dues uniformly required as a condition of membership.

**Section 2**    New employees, after completing their first thirty (30) calendar days of employment, shall become and remain members in good standing with the Union or pay a representative fee to the Union to the extent permitted by law.

**Section 3**    Starting not earlier, than the first pay period of the first full month of employment, after completing their first thirty (30) calendar days, and upon receipt of a voluntary written

Case ID: 250700568

authorization from an employee, the Employer shall deduct each month from the wage dues, assessments, and initiation fees or representation fees as fixed by the Union. The Union shall submit to the Employer an original copy of the completed Membership Application/ Authorization form prior to the deduction of regular monthly dues.

**Section 4**    The Employer shall not be obligated to make deductions of any kind from any employee, who, during the pay period in which the dues are deducted from the employee, shall have failed to receive sufficient wages to equal the deductions. The initiation fee shall be deducted in two (2) equal amounts on two (2) consecutive months along with the dues deductions.

**Section 5**    Except as provided herein, an employee who fails to join the Union, maintain Union membership or pay a representation fee shall, to the extent permitted by law, within twenty (20) calendar days following receipt of a written demand from the Union to the Employer requesting discharge, be discharged if during such period the required dues, initiation fees and/or representation fees have not been tendered.

**Section 6**    The Employer agrees to furnish the Union, via transmission method determined by the Union to an electronic or physical address identified by the Union in writing, each month with the names of newly-hired employees, including all temporary employees, their addresses, phone numbers, job Classifications, departments or work areas, their dates of hire, full-time equivalency (FTE), rate of pay, credited years of work experience, and names of retired or terminated employees (designated as either retired or terminated), together with their dates of termination or retirement and names of employees on leaves of absence, together with the dates such leaves of absence began and ended.

**Section 7**    The Employer agrees to make a payroll deduction monthly from an employee's pay for the Union's Political Action Fund upon written authorization of any employee covered under this Agreement. The Employer will remit the same by separate check including a report with the employee's name and amount dedicated to Union's Political Action Fund, via transmission method determined by the Union to an electronic or physical an address identified by the Union, in writing, as the Union's main office.

**Section 8**    The Employer shall remit to the Union via electronic transmission method determined by the Employer to an electronic location identified by the Union in writing, no later than the fifteenth of the month, or within seven (7) days of the date the deduction was deducted, all deductions for union dues or representation fees, initiation fees and assessments made from the wages of employees for the preceding month, along with the following information for each employee whether or not deduction is made:

a.    Job classification;
b.    Department or work area;
c.    Hourly rate;
d.    Number of hours worked and the gross earnings that the dues deduction is based on full, regular part-time, per diem, etc. status;
e.    Month the deduction is based on;
f.    Name;
g.    Initiation fees listed separately

Case ID: 250700568

h. Assessments listed separately; and

i. If applicable, a reason dues is not deducted.

**Section 9** It is specifically agreed that the Employer assumes no obligation, financial or otherwise, arising out of any of the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Employer harmless from any claims, actions, or proceedings by an employee arising from deductions made by the Employer hereunder, including the costs of defending against such. Once the funds are remitted to the Union, their disposition thereafter shall be the sole and exclusive obligation and responsibility of the Union.

**Section 10** Should the Hospital be chronically and significantly delinquent in the transmission of dues to the Union, the Union may put the Hospital on notice in writing that if not remedied, it will seek interest on any delinquency for which they must file suit or move to arbitration to collect.

## ARTICLE 4 - EMPLOYEE CLASSIFICATIONS

**Section 1**

| | |
|---|---|
| Regular | An employee who is scheduled to work every week on a regular basis. |
| PRN or Per Diem | An individual who is employed on an as-needed basis. Per diem employees are eligible for benefits only as required by law or as specifically provided in this Agreement. |
| Temporary | A. Temporary employees are: <br><br> a) Hired to cover a specific leave of absence for the duration of the leave; <br><br> b) Hired for a specific project for the length of the project or 180 days whichever is less; or <br><br> c) Employed on a temporary basis up to ninety (90) consecutive days, whether full-time or part-time, unless extended by mutual agreement between the Hospital and Union. Temporary employees are not eligible for benefits. |
| Full-Time | A full-time equivalent employee is regularly scheduled to work and/or one who works at least thirty-five (35) hours per week. |
| Part-Time | A part-time employee is regularly scheduled to work and/or one who works less than thirty-five (35) hours per week, but twenty (20) or more hours per week. |
| Part-time Non-Benefits Eligible | An employee who is not regularly scheduled to work at least part-time and/or who works less than twenty (20) hours per week. These employees are eligible for benefits only as required by law or as specifically provided in this Agreement. |

Case ID: 250700568

**Section 2**    In the event an employee is scheduled, assigned, or volunteers to work hours higher than originally hired or upon being awarded a bid, for a period of at least six (6) consecutive months, an employee may request that their FTE status be adjusted, as defined in this Article, to reflect the average of their hours worked in the prior six (6) consecutive month period. Time worked by the employee requesting an FTE status adjustment shall not include time worked for employees on any authorized leave as defined in Articles 20 (Section 6), 22, and 32 or for employees on short-term disability. Upon receiving an appropriate request for **FTE** status change, the Hospital will review her/his status and will respond to the employee within thirty (30) days. The Hospital's decision shall not be arbitrary or capricious.

## ARTICLE 5 - PROBATIONARY EMPLOYEES

**Section 1**    Newly-hired regular full-time employees shall be considered probationary employees for a period of ninety (90) calendar days of continuous active employment from the date of hire, excluding time lost for sickness and other leaves of absence. Per Diem and part-time employees shall also be considered probationary for a period of sixty-five (65) work days of active employment from the date of hire or one hundred eight (180) calendar days, whichever occurs first.

**Section 2**    Upon written notice to the employee and the Union, the Employer, in its discretion, may extend the probationary period of a full-time or part-time employee or per diem by up to an additional three (3) continuous months of active employment.

**Section 3**    During the probationary period, the Employer may discharge any such employee at will, and such discharge shall not be subject to the Grievance and Arbitration provisions of this Agreement.

**Section 4**    Although vacation hours accrue and sick hours accumulate beginning the date of hire, these hours may not be used during the probationary period, including any extension, immediately following employment. Upon successful completion of the probationary period, an employee will be granted service credit in his/her job classification retroactive to his/her date of hire and vacation, sick or other accrued benefits will become available for use in accordance with the relevant provisions of this Agreement and applicable TUHS policies.

## ARTICLE 6 - SENIORITY

**Section 1**    **Definition**. Seniority is defined as the length of time an employee has been continuously employed in any capacity by the Hospital predicated on the most recent date of hire by the Hospital. In the case of employees who became employed as the result of the Company's acquisition of their prior employer, the Hospital will recognize the employee's hire date with Chestnut Hill Hospital for purposes of determining seniority.

**Section 2**    **Accrual**

a.    A newly-hired employee's seniority shall commence after the completion of his/her probationary period and shall be retroactive to the date of his/her last hire.

Case ID: 250700568

b.     Seniority shall accrue for a maximum of six (6) months during a layoff provided the employee returns to work immediately following recall.

**Section 3     Application**

a.     The seniority rank of employees hired the same date will be determined by alphabetical order (A-Z) by last name.

**Section 4     Termination of Seniority**. An employee's seniority shall be broken when he/she:

a.     Quits, resigns or otherwise voluntarily terminates;

b.     Retires;

c.     Is discharged for just cause;

d.     Fails to return to work, upon the expiration of a leave of absence, on the day he/she had been scheduled to return, unless he/she has first notified the Hospital in writing, prior to such expiration, of his/her inability to return to work for a reason that the Hospital in its reasonable discretion deems to be satisfactory to the Hospital;

e.     Is laid off, on leave, (including disability, or worker's compensation) or otherwise out of work for a period of nine (9) months or employee's length of service, whichever is less.

f.     Fails to return to work within five (5) calendar days after he/she received a notice of recall from layoff, from the Hospital; or

g.     Is absent for two (2) or more consecutive scheduled work days without providing to the Hospital such notice as it requires (amount and type) under TUHS policy and, if applicable, this Agreement, for such an absence.

Note: For purposes of this Article a notice from the Hospital to an employee (including for example, but not limited to a notice of layoff, recall, reporting for work in a temporary position) is conclusively deemed to have been received by the employee on the earliest of the following:

1.     The date on which the employee was first actually informed by verifiable means, including e-mail, or other method of the pertinent information with a copy to the Union Chapter President;

2.     The date on which a written notice was actually received by the employee; or

3.     Three (3) calendar days (exclusive of Sundays and legal and/or contract-specific holidays) after the date on which the notice was first mailed by certified mail or overnight mail to the employee at the mailing address that he/she last furnished in writing to the Hospital's Human Resources Department. Failure of the employee to actually receive notice in any of the above instances shall not be an excuse for his/her not accepting a regular or temporary recall.

**Section 5     Restoration of Status**. Employees who return to employment in accordance with the provisions of this Article within six (6) months of the date of separation shall be restored to

Case ID: 250700568

their former status with respect to seniority, wage as appropriate and fringe benefits as defined by this Agreement; however, there shall be no accumulation of earnings, seniority or benefits during the period of separation, nor shall the Hospital be required to provide any insurance coverage that may have lapsed until such coverage has been re-applied for by the employee. In the event of such re-employment, the applicable coverage shall be effective as of the earliest possible date consistent with TUHS's policy.

**Section 6      Layoff and Recall**. In the event the Hospital determines to conduct a layoff, the Hospital will attempt to communicate information about the impending layoff to the employee and Union at least fourteen (14) calendar days in advance of the layoff. In the event the Hospital does not provide such notice, an employee who is actually laid off will receive base pay for scheduled work days within the fourteen (14) day notice period that are not worked as a result of the shortened notice.

When a reduction in staff occurs, employees will be laid off by reverse seniority within the job classification in the order below, provided (1) any given remaining employee possesses the requisite qualifications and skills to perform the job, and (2) any given remaining employee has not received three (3)  or more corrective action/discipline notices within the preceding six (6) calendar months:

a.      Employees who volunteer;
b.      Registry/Agency;
c.      Temporary employees;
d.      Per diem employees, then
e.      Regular employees.

Probationary, per diem and temporary employees are not covered by this Article, and thus have no recall rights or privileges under this Agreement if laid off.

**Section 7      Displacement**

a.      An employee who is given notice of layoff may, within two (2) working days of receiving said notice:

1.      Choose to fill a vacant position for which the employee has the necessary skill, qualifications and ability to perform the work in the position with a normal orientation to the position. (For the purpose of interpreting this Article, normal orientation to the unit and its procedures shall mean a familiarization with the specific chain of command, unit routine and physical layout of the unit, but shall not mean training with respect to the minimum skills and abilities required to competently and efficiently perform the essential duties of the position.) For the purposes of this Section, vacant positions mean vacancies as defined in Article 7 Section 1, positions occupied by probationary employees, temporary employees, or employees employed by an outside agency.

**Section 8      Recall**. Employees laid off shall be recalled by job classification in the inverse order of their layoff for posted vacancies. For the purposes of this Article, such vacancies shall be those positions that are determined to be posted by the Hospital and after its normal intra-departmental job bidding procedures are completed. If a vacancy occurs in a job classification

Case ID: 250700568

where no laid off employee has recall rights in that classification, then other laid off employees in accordance with seniority will be recalled, provided, in the opinion of the Hospital, they have the present ability to perform the work. An employee may refuse recall to a job classification other than the one from which the employee was laid off. If an employee exercises his/her right to refuse recall to another job classification, the employee shall continue to retain recall rights for up to nine (9) months or their length of service, whichever is less following their layoff, pursuant to Article 6 - Seniority.

For the purposes of recall from layoff, a vacancy shall be defined as a position posted and not filled pursuant to Article 7 - Position Posting and Filling of Vacancies.

## ARTICLE 7 - POSITION POSTING AND FILLING OF VACANCIES

**Section 1      Posting**. A vacancy is defined as an opening in a bargaining unit position which the Employer has decided to fill with a regular employee. The Employer retains the discretion to not fill an open position. Openings for bargaining unit positions shall be posted on the Hospital website designated by TUHS for a minimum of seven (7) calendar days. The notice shall generally include the job title, a summary of position duties, FTE, any special demands (such as weekend rotation), position requirements such as experience or educational requirements. Qualifications shall be the required skills, license, certification, education, experience and ability to perform in the position at the required level with normal orientation to the unit and its procedures.

a.      To be eligible for consideration, employees must file an application to fill a posted vacancy during the posting period. Any non-probationary employees with a satisfactory work record in his/her present job and who also meets the minimum qualifications may request, in writing, a transfer to fill such vacancy.

b.      The Employer may disqualify an applicant who has less than six (6) months service in his/her current position or who has active formal disciplines (written warning or above) or is otherwise not currently in good standing in their present position (including an employee on a formal performance improvement plan).

c.      The Employer will transfer the most qualified applicant on the basis of comparative qualifications, skill, ability, education, experience required competencies and seniority. Where the Employer determines the qualifications, skill, ability, education, competencies and experience of two or more applicants are equal, the Employer will award the transfer to the applicant with the greatest seniority. If no applicant from the bargaining unit is from the bargaining unit is qualified for the position, the Employer may hire from outside the bargaining unit.

d.      Where a vacancy as defined herein becomes available on a particular unit, classification, shift, and category of employment (i.e. full-time or part-time) and a non-probationary employee in that unit, classification and category of employment notifies the Hospital within five (5) calendar days of the vacancy becoming available that the employee desires a change to that shift, he/she shall be placed in that position. In the event more than one such employee requests the transfer, shall prevail.

Case ID: 250700568

**Section 2    Preference in Filling Vacancies**. All staff employed by the Hospital may apply for such permanent vacancy or newly created position and shall be given preference in filling such vacancy based on seniority, provided:

a.    The employee is, in the reasonable judgment of the Hospital, equally competent and able as compared to other applicants for the vacancy; and

b.    Approval of the applicant will not adversely affect patient care. An employee awarded a position shall be placed in the new position within sixty (60) calendar days, unless the employee and the Hospital agree otherwise in writing.

In the event seniority is the determining factor for preference in filling vacancies, seniority dates for full-time and part-time applicants will be considered first, then the seniority date for Per Diem applicants. If two (2) or more Per Diem applicants have the same seniority date, preference shall be given to the Per Diem applicant with the most hours worked in the preceding six (6) months.

If a Per Diem employee is awarded a regular position and has met the established eligibility requirements:

a.    The employee will be eligible to be covered under the health plan on the first of the month following the date of change in status; and

b.    The employee will be allowed to utilize any sick leave benefits as they are accumulated.

**Section 3    Temporary Filling of Vacancies**. The above does not prevent the Hospital from filling the permanent vacancy on a temporary basis for a temporary period up to a maximum of ninety (90) days unless such temporary period is extended by mutual consent. The Union agrees that it will not unreasonably withhold consent to extending the temporary period.

**Section 4    Limits on Applications**. Any employee employed by the Hospital who applies for and is awarded a posted position may not apply for another vacancy before six (6) months unless there is mutual agreement between the Hospital and the employee.

## ARTICLE 8 - HOURS OF WORK

**Section 1**    A normal shift shall generally consist of eight (8) consecutive hours to twelve (12) consecutive hours, excluding any unpaid meal period included in that shift.

**Section 2**    Employees are hired to work on an hourly basis.

a.    The "workweek" begins at 12:00 A.M. on Sunday and concludes seven (7) days later at 11:59 P.M. on Saturday.

b.    The normal starting time of a shift shall determine the day of the shift and the rate of pay for work performed on that shift.

**Section 3**    An employee working a shift of at least six (6) consecutive hours or more shall receive a thirty (30) minute unpaid meal period. An employee working a shift of at least eight (8)

Case ID: 250700568

consecutive hours shall be permitted to take two (2) paid fifteen (15) minute breaks and an additional fifteen (15) minute paid break for each additional four (4) hours worked beyond eight (8) hours. The parties understand that there will be exceptions to such unpaid meal periods and rest periods based upon patient care or other departmental requirements that may occur from time to time. Employees will not receive additional pay for any missed paid breaks.

**Section 4** Employees may take meals or breaks in designated areas of the facility. Employees may not take meal or rest periods in patient care areas, work areas (unless authorized by management) or public reception areas. Employees must report missed or shortened meal periods (less than thirty [30] minutes) due to work issues in accordance with TUHS policy.

**Section 5** An employee who is scheduled for work and reports to work and there is not work available or not a full shift of work, shall be paid for a minimum of two (2) hours on a straight time basis, unless: the employee has been informed not to report to work by the Employer by telephone or email or text message or the employee refuses suitable alternate work.

**Section 6** Work schedules shall be posted at least two (2) weeks in advance of the date the schedule begins, in blocks of at least four (4) weeks. When a posted work schedule needs to be changed, the Employer will endeavor to provide as much notice as practicable. Before making such changes, the Employer shall first seek volunteers and/or attempt to schedule Per Diem employees.

**Section 7** Full-time employees and part-time employees shall be scheduled up to their regularly-authorized hours before offering any hours to per diem employees. As part of the normal scheduling procedures, the Employer shall, at least seven (7) calendar days before the posted schedule is finalized, on a departmental (unit or other applicable) basis, make and post a list of additional shifts which it knows are open. An employee in that department (or unit or other applicable category) may then select from amongst those open shifts so long as doing so will not result in her/his being paid overtime pay. After employees from that department (or unit or other applicable category) have selected from amongst such open shifts, other qualified bargaining unit employees may then select for amongst those shifts, so long as doing so will not result in the payment of any overtime. If there are still open shifts, then employees may sign up for such shifts as overtime.

**Section 8** Due to the nature of hospital services, it is necessary to operate many areas on a twenty-four (24) hour per day, seven (7) day per week basis. Therefore, shifts, the start and/or end times of shifts, and/or the number of hours constituting a shift shall vary throughout the Hospital, and may change from time to time as the Employer determines necessary for operational or patient care reasons.

a. In the event the Employer determines to change the start and/or end time of any shift, the Employer shall notify the Union and the affected employees, in writing, at least twenty-one (21) calendar days before implementation of the scheduled change. In cases of emergency, the twenty-one (21) day notice may not be given. The Union, upon receipt of any such written notice from the Employer, shall have the right to engage in "effects bargaining" with the Employer related to any such change in the shift. If the Union desires such effects bargaining, the Union shall provide the

Case ID: 250700568

Employer with a written notice of its desire to engage in such effects bargaining (a "start /end time notice") within three (3) calendar days of the Employer's written notification to the Union.

The Parties shall meet promptly upon the Union's delivery of any such start/end time notice for the purpose of negotiating, on as continuous a meeting basis as is reasonably necessary, over the effects upon any employee(s) of the scheduled change. The Parties agree that, in the event such effects bargaining has not concluded by the date of the implementation of the scheduled change, the Employer may proceed with implementation of the scheduled change, while such effects bargaining proceeds.

The Union, during the course of such effects bargaining, shall be entitled to request relevant information from the Employer, in writing, which would be necessary for Union to conduct such effects bargaining, and to receive such information from the Employer in as timely a manner as possible so as to equip the Union to engage in meaningful effects bargaining prior to the date of implementation of the scheduled change.

b.       In the event the Employer determines to change the number of hours constituting a shift, the Employer shall notify the Union and the affected employees, in writing, at least twenty-eight (28) days before the schedule is posted The Union, upon receipt of any such written notice from the Employer, shall have the right to engage in "effects bargaining" with the Employer related to any such change in the shift. If the Union desires such effects bargaining, the Union shall provide the Employer with a written notice of its desire to engage in such effects bargaining (a "duration notice") within seven (7) calendar days of the Employer's written notification to the Union.

The Parties shall meet promptly upon the Union's delivery of any such start/end time notice for the purpose of negotiating, on as continuous a meeting basis as is reasonably necessary, over the effects upon any employee(s) of the scheduled change. The Parties agree that, in the event such effects bargaining has not concluded by the date of the implementation of the scheduled change, the Employer may proceed with implementation of the scheduled change, while such effects bargaining proceeds.

The Union, during the course of such effects bargaining, shall be entitled to request relevant information from the Employer, in writing, which would be necessary for Union to conduct such effects bargaining, and to receive such information from the Employer in as timely a manner as possible so as to equip the Union to engage in meaningful effects bargaining prior to the date of implementation of the scheduled change.

**Section 9**       Except in cases of emergency, employees shall not be required to work more than every other weekend. A hole in the posted schedule shall not be construed as an emergency, however, subsequent call offs within the same classification may constitute an emergency. For purposes of such scheduling, however, it is agreed that:

a.       Employees may be scheduled more frequently than every other weekend by mutual agreement between the Employer and the employee affected or where the employee fills or has filled a position by hire or transfer that is or has been established with a specific schedule providing for other than every-other-weekend-off scheduling.

Case ID: 250700568

b.      An employee who is scheduled to work on a weekend shall be required to "make-up" a scheduled weekend that he/she did not work based on the following:

1.      The make-up shift will be scheduled day-for-day so if an employee misses a single scheduled shift on the weekend, then the employee shall only be required to make up a single shift;

2.      The make-up weekend will be within either the present or immediately following schedule "block" of the call-off, unless the absence was approved in advance, or due to the employee being hospitalized, or on short-term disability, bereavement, or sent home by the Employer.

## ARTICLE 9 - LOW CENSUS/VOLUME

**Section 1**      Notwithstanding any other articles or provisions of this Agreement including but not limited to Article 6- Seniority, the Employer retains at all times the discretion to temporarily reduce staffing for a given unit/department/operation and/or shift due to decreased census (or volume or usage, as applicable), subject to the following order of reassignment/reduction:

a.      Float employee(s) to an alternate assignment if, in the judgment of the Hospital, the employee(s) has the requisite qualifications, skill, ability, education, experience and ability to perform the alternate assignment immediately;

b.      Solicit volunteers on a rotating basis beginning with the most senior employee from among employees in the affected unit/department/operation and/or shift to be reduced;

c.      Reduce agency/contracted employees (UNLESS THE Agency contract would require that the Agency person must be paid. In such case, the Agency person shall be retained); the Hospital, upon request, will provide the Union with a copy of the applicable portion of the contract;

d.      Reduce regular employees working overtime hours;

e.      Reduce per diem

f.      Reduce part-time employees working above their regularly scheduled hours.

In the event further reductions are needed, the Employer may cancel on a rotating basis beginning with the least senior regular full-time or part-time employee within the unit/department/operation and/or shift. In any event, the Employer shall retain such qualified staff as it determines necessary to best perform the remaining work.

**Section 2**      In the event of a cancellation, the Employer will notify the employee via phone call, email or text message at least two (2) hours before the start of the shift, except in cases of emergency. When an employee is canceled after reporting to work, she/he will be provided at least two (2) hours of work or pay.

**Section 3**      An employee may choose to take accrued and unused vacation or personal time or may take the time as unpaid time in the event they are cancelled or volunteer pursuant to Section 1 of this Article. In the event that the employee chooses to take vacation or personal time, such time shall be counted towards the calculation of overtime.

Case ID: 250700568

**Section 4**     The Hospital shall track the use of low census during the term of this Agreement, including:

a.     Employee's name, job classification, shift, and status;

b.     Whether the employee was canceled or sent home early voluntarily or involuntarily; and

c.     The date of the cancellation, number of hours and whether the employee used vacation or was unpaid.

The Hospital shall provide the Union Chapter President with the information each month and shall permit delegates upon request to review the available lists.

## ARTICLE 10 - OVERTIME

**Section 1**     Employees shall be paid time and one-half for all hours or parts of hours actually worked in excess of forty (40) hours per workweek.

**Section 2**     Overtime by classification within a department will be offered on an equitable basis. This is not intended to require uniformity among departments. Volunteers will be utilized whenever practical. Employees will not be required to work beyond their scheduled hours unless there is an unforeseen, emergent circumstance consistent with Act 102.

**Section 3**     There shall be no pyramiding of overtime and/or holiday premium pay.

**Section 4**     An employee shall have all overtime approved by his/her Department Manager or designee prior to working overtime. Where emergency circumstances make prior approval impossible, the employee shall obtain approval as soon thereafter as practicable. Such approval shall not be unreasonably denied.

## ARTICLE 11 - WAGES

**Section 1**     **Wage Rates**.

a.     Effective the latter of January 1, 2023 (provided that the acquisition has Closed) or the ratification of this Agreement, bargaining unit employees who earn less than $16.50 per hour will have their rate adjusted to the greater of $16.50 per hour or 5.00% of their current wage rate.

b.     Effective the latter of January 1, 2023 (provided that the acquisition has Closed) or the ratification of this Agreement, all other bargaining unit employees will receive an across-the-board increase of 5.00%.

c.     Effective the first full pay period following January 31, 2024, bargaining unit employees who earn less than $17.50 per hour will have their rate adjusted to the greater of $17.50 per hour or 3.00% of their current wage rate.

d.     Effective the first full pay period following January 31, 2024, all bargaining unit employees will receive an across-the-board wage increase of 3.00%

Case ID: 250700568

e.     The minimum wage rates for bargaining unit job classifications are listed on Appendix A.

f.     The Hospital will set wage rates for new hires based on their job classification, education, certifications (if applicable) and level of professional experience. In doing so, the Hospital will consider existing market conditions and existing wage rates for employees with similar levels of experience, education and certification (if applicable). The Hospital will not place a new hire at a higher wage rate than an existing employee in the same job classification with similar or greater levels of professional experience/education/certification without placing those existing employees in the job classification with similar or greater experience/education/certification at the same wage rate as the new hire.

g.     Employees who work in the float pool (previously known as "Tower Select") shall receive a $1.00/hour differential for all hours worked in the float pool.

**Section 2**     **Market Adjustments**. The Hospital has the right to evaluate each job classification for purposes of determining the need for market pay adjustments and will, at management's discretion, raise the compensation level as determined necessary for those job classifications. Prior to implementation of the needed market adjustment, management of the Hospital will notify the Union to advise them of the adjustments and the reasons for them.

Adjustments may be based on demonstrated difficulty with recruitment, retention, and regional and national documented shortages of qualified competent personnel. Adjustments may also be considered for job classifications with excessive turnover, prolonged vacancies, and when situations demonstrate an impact to effective operations, staffing, and providing safe patient care.

**Section 3**     **Incentive Pay**. Employees shall be eligible to receive incentive pay compensation at the discretion of the Hospital.

### ARTICLE 12 - ON CALL/CALL BACK/SHIFT DIFFERENTIAL

**Section 1**     Should the Hospital determine that it is necessary to place one or more employees "on call" within a classification in a department or unit, the on call requirement will be rotated among employees. Employees will be paid $2.50/hour for hours required to be on call. If called in, employees will be paid the greater of actual time worked or two hours at time and one-half. The on call stipend will not be paid for the hours called into work. A second call back within the two-hour guarantee will not result in a second two-hour guarantee.

**Section 2**     Employees in on call status will receive $2.50 per hour and must:

a.     Leave a telephone number where he/she can be reached or carry a pager or beeper; and

b.     Be capable of reporting for duty within a reasonable period of commuting time based on departmental policy.

**Section 3**

a.     In cases where a twelve (12) hour shift employee(s) has a shift cancelled due to low census, a Unit may place one person on call in a classification within that Unit that is being "low censused."

Case ID: 250700568

The person will be selected among those who shift is cancelled including persons cancelled before reporting to work. The Hospital will request volunteers. If no volunteers, the least senior employee in the Unit within the affected classification will be placed on call. Thereafter, in such situations of low census, it will be rotated by seniority. The person placed on call for day shift will be called by 1:00 p.m. and either released from on call or told to report at 3:00 p.m. For night shift, the person will be called by 9:00 p.m. to report or not by 11:00 p.m. The on call pay will be paid until the person is called and released or until the person is required to report to work. The employee shall receive his or her regular rate of pay for the remainder of the original shift he or she was scheduled to work if called back to work. If an employee is not on call, but agrees in advance to come in for an additional shift when requested, call back pay does not apply (excludes emergency special needs).

b.      If the called-back employee works past the scheduled end of his or her normal shift, an overtime situation will exist only if the actual hours worked in the day when aggregated with all other hours worked during that week place the employee in an overtime status (i.e. more than 40 hours/week).

### Section 4      Shift Differential

a.      Evening shift differential shall be $2.00 per hour. An evening shift is defined as a shift, the majority of the hours of which occur between 3:00 p.m. and 11:00 p.m. For example, if an employee is scheduled to work a shift that begins at 12:00 Noon and ends at 8:00 p.m., he or she shall receive an evening shift differential for all hours worked on such 12:00 Noon to 8:00 p.m. shift.

b.      Night shift differentials shall be $3.00 per hour. A night shift is defined as a shift, the majority of the hours of which occur between 11:00 p.m. and 7:00 a.m. For example, if an employee is scheduled to work a shift that begins at 8:00 p.m. and ends at 4:00 a.m., he or she shall receive a night shift differential for all hours worked on such 8:00 p.m. to 4:00 a.m. shift.

### Section 5      Preceptor Differential

If the Hospital determines that a preceptor is needed, the Hospital will pay one dollar ($1.00) per hour for each hour worked as a preceptor. Preceptor programs are determined based upon Hospital need and must be authorized by the precepting employee's immediate Supervisor for new bargaining unit employees and bargaining unit employees transferring between or learning specialties within the department or job classification including job classifications other than the preceptor's own. When operationally possible, employees shall not be required to precept or required to precept more than one employee during the same shift.

## ARTICLE 13 - HEALTH AND WELFARE BENEFITS

**Section 1      Health Care Benefits.** All active full-time employees in the bargaining unit will be eligible for medical and prescription, dental and vision plans to the same extent as hourly, non-bargaining unit employees of the Company and subject to the terms and conditions of such plan(s). Based on information disseminated during open enrollment, employees shall contribute to the cost of the selected health plan (including prescriptions) on a pre-tax basis and the rates will be the same as the rates for hourly, non-bargaining unit employees of the hospital. Current contribution

Case ID: 250700568

rates for medical and prescription plans range from 10% to 25% of premium cost depending on the plan and level of coverage (single vs. family) selected by the employee. Plan rates are subject to change at the beginning of the plan year, each January 1.

**Section 2**     **Part-Time Employees.** Regular part-time employees in the bargaining unit hired at twenty (20) or more hours per week are eligible for the Company benefit programs (medical and prescription, vision, dental) on the same basis as equivalent hourly, non-bargaining unit employees and shall pay the same biweekly contribution amount as full-time employees for single coverage, plus the difference between the premium for single and family coverage for employees electing family coverage.

**Section 3**     **Life Insurance.**

a.      Eligible employees in the bargaining unit shall be given ten thousand dollars ($10,000) in life insurance and accidental death and dismemberment insurance (double indemnity in case of accidental death or dismemberment) at no cost to the member to the same extent as hourly, non-bargaining unit employees of the Company and subject to the terms and conditions of such plan.

b.      Eligible employees in the bargaining unit shall be given the opportunity to purchase voluntary supplemental term life insurance to the same extent as hourly, non-bargaining unit employees of the Company and subject to the terms and conditions of such plan(s).

**Section 4**     **Disability.** Eligible employees in the bargaining unit may purchase long-term disability insurance to the same extent as hourly, non-bargaining unit employees of the Company and subject to the terms and conditions of such plan(s).

**Section 5**     **Dependent Care & Flexible Spending Program.** Employees in the bargaining unit shall be permitted to make pre-tax contributions to a healthcare flexible spending account and a dependent care spending account to the same extent as hourly, non-bargaining unit employees of the Company. The dependent care spending account benefit is only available to full-time employees.

**Section 6**     **Voluntary Benefits.** All full-time and regular part-time employees in the bargaining unit hired at twenty (20) or more hours per week are entitled to participate in voluntary benefit programs offered by the Company to the same extent as hourly, non-bargaining unit employees of the Company. These benefits currently include plans such as short-term disability, survivor insurance.

**Section 7**     **Changes and Conflicts.** The Company reserves the right to change benefit plans and carriers under this Article at any time, provided such changes are not limited to employees covered by this Agreement. Prior to changing carriers or making changes to benefits, the Company will meet and discuss the change with the Union if so requested. The Company will provide the Union with at least thirty (30) days' notice of any such changes. In the event Temple chooses to change the plan design for benefits described in this Article, it will provide options with comparable aggregate benefits to the plans currently offered in this Article unless the changes are necessary to avoid the Cadillac Tax under the Affordable Care Act.

Case ID: 250700568

**Section 8**    To the extent there is any conflict, inconsistency or discrepancy between a plan document and the terms of this Agreement, the plan document governs.

**Section 9**    **Compliance with the Affordable Care Act.** Temple will comply with the various provisions of the Patient Protection Affordable Care Act as it relates to part-time employees, in general and specifically covered by this Agreement. Temple will calculate the "look-back" period each year to determine the employees deemed by the Act to be eligible for medical/prescription benefits. This look back period shall be the pay period that includes hours paid for the pay period coincident with or next following January 1 through the last pay date in October each year.

**Section 10**    If it is determined that Temple is in overall compliance with the Act without offering medical coverage to this group in general, there shall be no obligation to offer the coverage to employees covered by this Agreement. If Temple must offer coverage to such employees, it shall not exclude employees covered by this Agreement.

**Section 11**    Employees deemed as eligible shall be so notified and have the opportunity to enroll during the normal open enrollment period with coverage effective January 1 following enrollment. Eligible employees have the same medical plan contributions as part-time employees.

**Section 12**    Eligibility to remain in the plan will extend until the end of the next look back period as long as the employee continues to earn wages that will cover the employee contributions. Employees without such earnings will be offered to continue coverage through COBRA.

## ARTICLE 14 - RETIREMENT BENEFITS

**Section 1**    Effective January 1, 2023, all eligible bargaining unit employees may elect to participate in the Temple University Health System, Inc. 403(b) Plan (the "TUHS 403(b) Plan"), and the Employer shall make contributions to the Temple University Health System, Inc., Defined Contribution Retirement Plan (the "TUHS DC Plan," and together with the TUHS 403(b) Plan, the "TUHS Plans") for all eligible bargaining unit employees.

a.    Employer contributions to the TUHS DC Plan are computed using base wages. The TUHS DC Plan provides for increased TUHS contributions based on employee participation in the TUHS 403(b) Plan from January 1, 2023, forward.

b.    The contributions schedule shall be as follows:

| Years of Participation beginning January 1, 2023 | TUHS Contribution (on Base Wages) |
|---|---|
| Years 1, 2, & 3 | 3.0% |
| Years 4 & 5 | 3.5% |
| Years 6 & 7 | 4.0% |
| Years 8 & 9 | 4.5% |
| Greater than 9 | 5.0% |

c.    Full-time employees and part-time employees scheduled 20 hours or more per week are eligible to participate in the TUHS Plans on the first of the month following the employee's month

Case ID: 250700568

of hire. New employees are automatically enrolled in the TUHS Plans with investments directed to the Plan's Qualified Default Investment Alternative (QDIA.) The employee maintains the ability to direct the investment of their accounts in the TUHS Plans among the TUHS Plan's approved investment options.

d.    Vesting for the TUHS DC Plan generally is three (3) years of credited service where the employee has worked at least 1000 hours per plan year. Employees are always fully vested in their account balances in the TUHS 403(b) Plan.

e.    Any employee that was employed at the Hospital on December 31, 2022 and hired by TUHS at the Hospital on January 1, 2023 (or who is on approved leave on December 31, 2022 and who is hired by TUHS at the Hospital at the conclusion of that leave) will be 100% vested in the TUHS DC Plan as of the time of their hire by TUHS at Chestnut Hill.

f.    Effective January 1, 2023, employees may elect to contribute 2% of their base wages to the TUHS 403(b) Plan. The Hospital will provide a corresponding contribution to the TUHS DC Plan. These employer contributions shall be subject to the same vesting schedule provided for in section above. Employee's contributions shall be vested immediately.

**Section 2    Supplemental Retirement Accounts.** Supplemental Retirement Accounts (formerly the voluntary Tax Deferred Annuity program) shall remain in effect. Employees shall have access to all investment options available to employees of TUHS.

**Section 3**    TUHS reserves the right to change vendors and investments available under the TUHS Plans. TUHS agrees to meet and discuss any changes with the Union prior to implementation.

## ARTICLE 15 - EDUCATIONAL ASSISTANCE REIMBURSEMENT

Employees in the bargaining unit shall be eligible for tuition remission/reimbursement in accordance with Company policy on the same terms and conditions as and for so long as hourly, non-bargaining unit employees of the Company and any changes to the Company policy automatically apply to employees in the bargaining unit to the same extent that such changes apply to hourly, non-bargaining unit employees of the Company  The Hospital will give the Union thirty (30) days' notice of the change.

## ARTICLE 16 - PAID TIME OFF

### Section 1    Vacation

Full-time and part-time employees in the bargaining unit accrue vacation time upon hire according to the following chart (2 weeks per fiscal year):

| Bi-Weekly Paid EE Accrual Rates | Bi-Weekly Vacation Accrual | Maximum Accumulation |
|---|---|---|
| 80 hours/pay period | 3.08 hrs | 120 hrs |
| 75 hours/pay period | 2.89 hrs | 112.5 hrs |
| 70 hours/pay period | 2.70 hrs | 105 hrs |

Case ID: 250700568

| 40 hours/pay period | 1.54 hrs | 60 hrs |

After 2.5 years of seniority, employees earn three (3) weeks of vacation time each fiscal year. After 11.5 years of seniority, employees earn four (4) weeks of vacation each fiscal year.

Employees can accumulate up to 150% of their annual accrual rate. Once they reach their maximum accumulation, they will not earn additional time until they accumulation falls below the maximum. Employees will not be compensated for vacation time not taken.

Per diem employees are not eligible for vacation time.

Vacation may be used after three (3) months of employment for employees hired after the date of this Agreement. Employees who are employed by the Hospital as of the Closing of the acquisition will be permitted to carry over up to four (4) weeks of their existing ETO balances based on their authorized hours to be used as vacation.

## Section 2    Sick Days

Full-time and part-time employees in the bargaining unit shall accrue sick time on the basis of one working day per month from July through April (10 days per fiscal year, pro rated for part-time employees).

 Sick time may be used after 90 days of employment for employees hired after the date of this Agreement.

Employees who are employed by the Hospital as of the Closing of the acquisition will be permitted to carry over up to 40 hours of their existing IPT balances (pro rated for employees who are scheduled for less than 40 hours per week based on authorized FTE) as available sick time to be used in accordance with TUHS policy.

Per diem employees are not eligible for sick days.

## Section 3    Personal Days

Full-time employees receive three (3) personal days at the beginning of each fiscal year.  Personal days are pro rated for part-time employees.  Per diem employees are not eligible for personal days.

In the first year of employment, personal days are pro rated based on hire date as follows:

| Date of Hire | *Fiscal Year Personal Time Entitlement* |
|---|---|
| July, August, September | 3 days |
| October, November, December | 2 days |
| January, February, March | 1 day |
| April, May, June | 0 days |

Unused personal days will expire at the end of each fiscal year.  Requests should be submitted at least two (2) business days in advance except in extraordinary circumstances.

Case ID: 250700568

## Section 4    Vacation Scheduling and Use

a.    Priority vacation calendars (February 1 through the following January 31) for each department shall be posted on or about January 1. After January 31st, all vacation requests must be submitted six (6) weeks prior to the start of the schedule that includes the requested vacation time. Managers shall determine how many slots may be taken at any one time.

b.    On or about February 15, priority requests for full weeks shall be granted on a rotating basis, so that priority vacation periods are not monopolized. The rotation shall begin with the employee having the greatest seniority. Employees are not entitled to take the same priority weeks in consecutive years unless other employees have had the opportunity to bid on the week. Subject to staffing needs, each eligible employee shall have the chance to take at least one (1) week off during the summer vacation period which is defined as the period between (and inclusive of) Memorial Day and Labor Day. No employee shall be entitled to take more than one (1) week during this summer period until every eligible employee has been given a chance to take at least one (1) week off. (Part-time employees' vacation weeks shall be based on their FTE status per pay period.) If there are not enough weeks available, preference shall be granted according to seniority.

c.    Vacation requests submitted after January 31 shall be granted on a first come, first served basis. No vacation days shall be paid or approved unless a prior written request is submitted at least six (6) weeks in advance to the Department Head, except at the discretion of the Department Head. When simultaneous requests are made, seniority shall be determinative. The Employer shall provide a response to any request under this paragraph within ten (10) calendar days. However, the lack of such response shall not be construed as approval. In all cases, vacation scheduling shall be subject to staffing and patient care needs.

d.    In emergency circumstances where patient care is jeopardized, scheduled vacation may be canceled. In such cases, due consideration shall be given to prior financial commitments made by individual employees.

e.    No vacation may be taken until the employee has completed her/his probationary period.

f.    If a death occurs during any employees' approved vacation time, and that employee would otherwise be qualified for Bereavement days under TUHS policy, then those vacation days that would otherwise be qualified bereavement days will be treated as bereavement days.

g.    An employee on an un-paid approved leave of absence shall not earn vacation time.

h.    Regular full-time and regular part-time employees with at least six (6) months continuous service and who have completed their probationary period, and who give at least fourteen (14) days' notice of voluntary termination and actually work the notice period shall be entitled to be paid for accrued but unused vacation pay at the time of termination.

i.    If an employee is hospitalized or is receiving Workers' Compensation or disability payments prior to his/her scheduled vacation and the hospitalization or disability with payment extends into the scheduled vacation period, the employee's vacation may be rescheduled at the discretion of the Hospital.

Case ID: 250700568

j.    Scheduled vacation shall not accrue points under the Hospital Attendance Policy.

## ARTICLE 17 - PAID HOLIDAYS

**Section 1**    Regular full-time employees shall earn the following paid holidays (pro rated for part-time employees):

| | |
|---|---|
| New Year's Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Day After Thanksgiving |
| | Day Before Christmas |
| | Christmas Day |

a.    For scheduling and holiday pay purposes, holiday hours shall be based on the date and time the shift begins (i.e., if the shifts starts on the holiday, it is considered a holiday shift).

**Section 2**    Holiday pay for a full-time employee shall be based upon the employee's base rate of pay for his/her normal straight time hours to a maximum of eight (8) hours for FTE status of 1.0. To qualify for holiday pay, the Employee must work his/her last scheduled shift before the holiday, his/her first scheduled shift after the holiday and, if applicable, the holiday if scheduled.

**Section 3**    The Union recognizes that the Hospital's operations require continuous service and it is agreed that the Hospital shall have the right to require any employee to work on any of the holidays due to patient care and/or other operational needs. The Hospital will endeavor to permit an employee to have as many paid holidays off as possible consistent with the orderly and efficient operations of the Hospital.

**Section 4**    Holidays shall generally be scheduled on a rotating basis. The holiday schedule shall not conflict with pre-approved vacation.

**Section 5**    In the event an employee is required to work on New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day, she/he shall be paid at the rate of time and one-half for all hours worked on the holiday, as defined in Section 1(a) above, and shall, in addition, receive an additional day off at his/her regular rate of pay to be used within sixty (60) days or pay at the same rate, as determined by Temple. Christmas Eve and the Friday after Thanksgiving, when worked on the holiday as defined in Section 1(a) above, shall be paid at time and one half the regular rate of pay, but shall not result in an additional day off or be considered a holiday for purposes of scheduling rotation.

## ARTICLE 18 - LEAVES OF ABSENCE

**Section 1**    **General Application Procedures.** Leaves of absence, whether paid or unpaid, will be governed by the applicable TUHS leave polic. The policies may be changed by the Hospital and the changes applicable to the bargaining unit provided the changes apply to the unrepresented employees of the Hospital as well. The Hospital will give the Union thirty (30) days' notice of the change.

Case ID: 250700568

**Section 2**     **Family and Medical Leave.** Employees will be entitled to leave under and will be required to abide by the provisions of the Family and Medical Leave Act as administered by the TUHS Family and Medical Leave Policy.

## ARTICLE 19 - DISCIPLINE AND DISCHARGE

**Section 1**     The Hospital has the right to maintain discipline and efficiency and may discharge, suspend or discipline any employee for just cause. This restriction shall not apply to probationary Employees as defined in Article 5. Employees will be subject to the terms of the TUHS Corrective Action/Discipline Policy.

**Section 2**     When an employee is called into an interview in which the employee reasonably believes disciplinary action may result or into a meeting in which disciplinary action may be taken, the employee has the right to request Union representation. The Hospital shall comply with the employee's request. Upon such a request, the Hospital shall defer conducting such an interview for a reasonable period of time until a Union Representative can attend the interview, subject to the following: The parties recognize that extraordinary circumstances might dictate that the employee must be interviewed before the Union Representative can be in attendance, or else the investigation would be unduly compromised, in which event the Hospital may proceed with the interview in the absence of the Union Representative.

**Section 3**     Minor discipline occurred by an employee will not be considered for progressive discipline after the passage of twelve (12) months provided the employee has not incurred any discipline during that twelve (12) month period. Major discipline will be considered regarding future discipline under the Just Cause standard.

**Section 4**     If discipline of an employee results from conduct relating to a patient or a visitor and the patient or visitor does not appear at an arbitration arising from a related grievance, the arbitrator shall not consider, under any circumstances, the failure of the patient or visitor to appear as prejudicial or relevant.

**Section 5**     The term "patient" for the purpose of this Agreement shall include those seeking health care services as well as those already admitted. A "visitor" shall include anyone (including family members and/or private duty care providers) accompanying a patient, visiting a patient or engaged in business with the Hospital.

**Section 6**     All discipline will be given as soon as practical after the matter has been investigated by the Hospital.

**Section 7**     In the event an employee is suspended or discharged, notice thereof shall be sent by mail or e-mail by the Hospital to the Union's District and Local Office set forth below with a copy to the Union Chapter President unless a Union delegate is present when the employee is notified of the discipline:

> 1500 N. 2nd St., 2nd Floor, Suite 12
> Harrisburg, PA 17102

Case ID: 250700568

## ARTICLE 20 - GRIEVANCE AND ARBITRATION

**Section 1**    A grievance shall be defined as a written claim of an employee, the Union, or the Hospital during the term of this Agreement, which involves the interpretation of, administration of, or compliance with a specific provision of this Agreement (a "Grievance"). No Grievance may be filed concerning a subject within the function of the Labor-Management Committee, unless specifically allowed elsewhere in this Agreement.

For the purposes of defining "days" in this Article, "calendar days" are inclusive of all days of the week.

Any time limit or steps set forth in this Article may be waived by the written agreement of the Parties.

**Section 2**    Prior to the filing of a Grievance, nothing contained in this Article shall prevent any employee, with or without a Union representative, from informally and verbally presenting and resolving any matter which otherwise might result in the filing of a Grievance. In the event the matter is not resolved in the manner described in this Section 2, the employee and/or the Union steward may present a Grievance in accordance with Section 5, below.

**Section 3**    All Grievances must be filed in writing, as provided for in Section 1, above, within ten (10) calendar days after the event or events giving rise to the Grievance occurred, or within ten (10) calendar days after the event or events giving rise to the Grievance reasonably should have been known to the employee or Union by completion of the "Grievance form" attached to this Agreement as "Appendix B (a "Grievance form").

**Section 4**    Subject to staffing and patient care needs, Union representatives may be given a reasonable opportunity to process Grievances. Union Representatives will not normally be given permission to investigate grievances during working time. Permission must be obtained from the appropriate supervisory personnel in writing before conducting any investigation or processing of a Grievance on work time.

**Section 5**    Grievances shall be processed in the following manner:

**Step 1:** Grievances shall be filed with the employee's immediate Department Director/Department Manager, or his/her designee, by hand-delivery or electronic mailing of the Grievance form; if emailed, the Union shall also submit an electronic copy of the grievance to the Human Resources Director. A Grievance shall identify, by completion of the Grievance form: 1) the specific provisions of this Agreement claimed to have been violated, 2) the Employer representatives, if any, or employees involved in the event(s) underlying the Grievance, 3) a description of the claimed violation of the specific provisions of this Agreement, and 4) a description of the specific nature of the relief requested. The Grievance form shall be signed by an authorized Union Delegate or Union Representative. A discussion of the Grievance shall be held within seven (7) calendar days of receipt of the Grievance. For purposes of a discussion of the Grievance, the employee may be accompanied by no more than one (1) authorized Union Delegate. A written answer of the employee's supervisor or his/her designee shall be made available to the Union Delegate within seven (7) calendar days following the completion of the discussion described in this Step 1. If the Grievance is not mutually resolved in writing in the course of the processing of the Grievance

Case ID: 250700568

pursuant to this Step 1, whether or not a discussion is held, the Grievance shall be presented in writing to the Employer as set forth in Step 2.

**Step 2**: If the Grievance is not mutually resolved in writing in the course of the processing of the Grievance pursuant to Step 1, above, the Grievance next shall be presented to the Human Resources Director for discussion with the employee and Delegate and/or within seven (7) calendar days following receipt of the answer provided for in Step 1. The Step 2 discussion shall be held within seven (7) calendar days following receipt of the Grievance provided for in this Step 2. The Director of Human Resources shall render a decision in writing and provide a copy to the Union Steward within seven (7) calendar days following completion of the discussion described in this Step 2.

**Step 3**: If the Grievance is not mutually resolved in writing in the course of the processing of the Grievance pursuant to Step 2, above, the Union may, within twenty-one (21) calendar days following receipt of the decision provided for in Step 2, above, notify the Employer in writing that the Grievance is being submitted to a neutral arbitrator, as provided for below. The Union's notice will:

a.      Request arbitration from the American Arbitration Association (AAA) identifying the Grievance and filing whatever forms are required by the AAA; and

b.      Request the AAA to send to each party a list of fifteen (15) proposed arbitrators. AAA shall administer the selection of the Arbitration in accordance with its rule on voluntary labor arbitration.

The parties, by mutual agreement, may also by-pass the above procedure and mutually agree on an arbitrator. In all cases, the decision of the arbitrator will be final and binding on all parties.

The arbitrator's jurisdiction shall be exclusively confined to the facts and circumstances giving rise to the Grievance and the issues presented on the face of the Grievance. The arbitrator shall have the authority only to interpret the terms and provisions of this Agreement and shall have no authority to add to, modify or change any of the provisions set forth in this Agreement. Damages, if awarded, shall be reduced by the employee's receipt of unemployment compensation benefits, worker's compensation benefits, earnings from another source, employment or otherwise, and/or failure to mitigate by seeking employment and/or earnings from another source.

The cost and the expense of the arbitrator and the hearing room shall be shared equally by the parties. If either party requests an official transcript, each party will pay half. All other expenses shall be borne by the party incurring them, and neither party shall be responsible for the costs of the other.

**Section 6**      No individual employee shall have the right to submit a Grievance to arbitration.

**Section 7**      Any Grievance not answered within the specified time periods may be appealed to the next Step of the grievance procedure immediately. Grievances may be entertained at any Step by the mutual consent of the parties in writing. Class action grievances, i.e., those involving three (3) or more employees and involving the same issues and circumstances, shall commence at Step 2. The time limits may be changed at any Step by the mutual consent of the parties in writing.

Case ID: 250700568

**Section 8**     Any time limit imposed upon the handling of grievances shall commence on the date of receipt.

**Section 9**     At contract ratification and upon request, the Union shall provide the Director of Human Resources with written notice of all Union Delegates, grievance advocates, or others who may be involved in the grievance process. Thereafter, Union will advise Hospital in writing of any changes to the list.

**Section 10**     Prior to filing any unfair labor charge which arguably involves a violation of this Agreement, the Union shall be required to exhaust the Grievance and Arbitration procedures set forth in this Article. If the Union fails to so exhaust the Grievance and Arbitration procedures, it shall be solely responsible for the costs incurred by the Employer in defending against the unfair labor practice charge and shall immediately withdraw such unfair labor practice charge. This clause shall not preclude the Union from filing an unfair labor practice charge to avoid lapse of the Section 10 (b) period set forth in the National Labor Relations Act, where expiration of the period is imminent. It also shall not apply in cases where the Employer declines to participate in the Grievance or Arbitration process.

**Section 11**     In the event the Union and/or the employee fails to adhere to any time limitation set forth in in this Article, the Grievance shall be deemed closed, with prejudice against any re-filing of the Grievance.

## ARTICLE 21 - PERSONNEL RECORDS/EVALUATIONS

**Section 1**     **Personnel Files**

a.     Employees and/or their designated representative shall have access at least annually to their own personnel file by appointment in the Human Resources Department. Employees and their representatives shall be permitted to take notes of items in the file but shall not remove any item. Employees shall have the right to obtain copies of any documents in their personnel file that they have signed.

b.     Employees may make written comments and cause them to be placed in their personnel file in response to discipline or their most recent performance evaluation so long as such comments:

1.     Are made in writing by their own hand and signed by them; and

2.     Are submitted to the Employer's Human Resources Department within seven (7) calendar days from the date they were first informed of the discipline or performance evaluation. Inappropriate employee comments, i.e. comments which are vulgar, obscene or defamatory, shall not be placed in the employee's file.

**Section 2**     **Evaluations**

a.     Each employee will be evaluated and advised of the substance of the evaluation by the employee's immediate supervisor or designee at least on an annual basis.

Case ID: 250700568

b.      Evaluation is a collaborative, non-disciplinary process which may include peer or self-evaluation. A copy of the evaluation will be furnished to the employee. If peer evaluation is utilized, the employee and Hospital may each select equal numbers of those individuals who may participate in that employee's evaluation.

**Section 3**      Employees will be given the opportunity permitted to view written employee discipline and their annual evaluation prior to it being placed into the personnel file. If the material was not initially seen by the employee, it may, upon being viewed by the employee, thereafter be placed into the file. If not seen by the employee, the time limits will begin to run for filing a grievance when the employee views the document.

## ARTICLE 22 - ATTENDANCE POLICY

The applicable Attendance Policy is attached as Appendix C.

## ARTICLE 23 - HEALTH AND SAFETY

**Section 1**      The Hospital will abide by those applicable Federal and/or State health and safety statutes and regulations by which it is bound, and shall take such actions as it determines necessary in order to provide, in accordance with such laws and regulations, for the health and safety of its employees covered by this Agreement.

## ARTICLE 24 - NON-DISCRIMINATION

**Section 1**      Neither the Union nor the Hospital will unlawfully discriminate against any employee in any matter of employment, because of the employee's age, race, color, creed, national origin, sex, marital status, disability, or sexual orientation.

**Section 2**      The parties recognize that under the Americans with Disabilities Act of 1990 and the Pennsylvania Human relations Act, the Employer may be required to make reasonable accommodations for qualified individuals with disabilities. The parties further recognize that in making reasonable accommodations in accordance with the above statutes, the Employer may at times be required to take actions that are not consistent with the provisions of this Agreement. Prior to taking any such action, the Employer agrees to meet and discuss the issue with the Union. Upon agreement by the Union, the applicable provisions of this Agreement shall be waived in order to make such reasonable accommodations and such waiver shall not be subject to the grievance and arbitration provisions of this Agreement.

## ARTICLE 25 - SUBSTANCE ABUSE POLICY

Each employee shall be subject to TUHS's Substance Abuse Policy" (the "Substance Abuse Policy") in effect at the time of whatever the event is which is within the scope of the Substance Abuse Policy.

A copy of the Substance Abuse Policy is made a part of, this Agreement by reference.

Case ID: 250700568

## ARTICLE 26 - SUBCONTRACTING

**Section 1**      The Hospital shall continue to have the right to subcontract bargaining unit work.

**Section 2**      The Hospital shall provide the Union with written notice of any decision to subcontract bargaining unit work at least thirty (30) consecutive calendar days in advance of the effective date of the subcontracting.

**Section 3**      Where the Hospital intends to subcontract bargaining unit work for an entire classification or classifications, it will not do so without first discussing the subcontracting with the Union. In the event the Hospital determines to subcontract bargaining unit work of an entire classification or classifications, or implement a change in vendors for services previously subcontracted the Hospital shall include in any subcontracting agreement a provision which will require the subcontractor to offer employment to those employees who are employed by the Hospital, or previous subcontractor, as of the executive date of the subcontracting agreement, at a straight-time hourly rate of pay which is prevailing at the time of the subcontracting agreement is executed.

Provided that a majority of employees accept the contractor's offer of employment, the Hospital shall also include in any subcontracting agreement a provision which will require the subcontractor to recognize the Union as the collective bargaining representative for the employees who accept the offer of employment from the subcontractor described above.

**Section 4**      The Hospital will offer to any employee to whom an offer of employment is not made by the Subcontractor any available opening in the bargaining unit with regard to which the employee has the skill and ability to perform. If any employee moves into another bargaining unit position, she or he shall maintain her or his seniority under this Agreement.

## ARTICLE 27 - UNION ACTIVITY AND VISITATION

**Section 1**      a.      The term 'Union Delegate' is defined, for the purposes of this Agreement, to mean an employee of the Hospital who holds a regular leadership position (elected or appointed) with the Union, such as 'Chapter Officer or 'Delegate', responsible for administering this Agreement, handling processing grievances, and/or otherwise acting as a liaison between bargaining unit employees, the Union and the Employer.

b.      The terms 'Union Representative' or 'Staff Representative' are individually and collectively defined, for the purposes of this Agreement, to mean an individual who is on the Union's staff and who is not employed by the Hospital.

**Section 2**      A reasonable number of Union Representatives shall have reasonable access to Hospital facilities in which bargaining unit employees are employed for the sole purpose of administering this Agreement. The Union shall promptly provide the Hospital with a written list of such representatives and of any changes thereto during the term of this Agreement. Before a visit such Representative(s) shall first inform the Hospital's Director of Human Resources or his/her designee by telephone or email of the fact of and the proposed timing of their requested visit, its general nature, and the area(s) they intend to visit. Requests for visitation shall not be unreasonably denied. Such business shall not under any circumstances interfere with the Hospital's

Case ID: 250700568

operations in any way, specifically including, but not limited to the Hospital's delivery of patient care services nor shall such business take place during employee working time. Working time does not include paid breaks or unpaid meal break.

**Section 3**      The Hospital recognizes the right of the Union to appoint or otherwise designate Officers/Delegates. The Hospital agrees to recognize the authority of Union Delegates as defined in this Agreement or applicable law.

**Section 4**      Union Officers/Delegates shall be given reasonable opportunity to represent employees in disciplinary meetings, and process grievances during regularly scheduled work time without loss in earnings. Such Delegate functions shall not interfere with patient care or Hospital operations. The Union Delegate shall obtain permission from the Supervisor prior to engaging in any activity relating to the Union Delegate function, which permission shall not be unreasonably denied.

**Section 5**      The Union shall retain the right to post Union related information on the bulletin boards in each department's break room in which bargaining unit employees' work. The Union shall, prior to posting, provide copies of posted materials to the Director of Human Resources or his/her designee. If, during the term of this Agreement, employees represented by this Agreement are assigned to work in new locations the Union and the Employer shall meet to discuss use of additional bulletin boards.

**Section 6**      During the new hire orientation period for new employees, the Employer will allow a representative of the Union fifteen (15) minutes during such program, to discuss the Union and terms of this Agreement at a prearranged time that is mutually agreed to between the Employer and the Union.

**Section 7**      The Hospital will reasonably attempt, upon request, to initially schedule or change the already posted schedules of one (1) or more employees who are the Union's elected Chapter Officers or Executive Board members or Union Delegates in order to permit their requested attendance, on their own time, at special Union assemblies or Executive Board meetings, provided at all times the requesting employee shall give the Hospital at least forty-five (45) days' advance written notice, presented to both the employee's immediate supervisor and/or Department Manager and to the Director of Human Resources or his/her designee, of the date(s) and time(s) of such meetings. Such requests shall not be unreasonably denied.

**Section 8**      Provided space is available and does not conflict with Hospital operations, the Union, upon request, may meet with its members for the purpose of conducting contract ratification meetings, and meetings to explain the terms of the Agreement. Employees may not attend such meetings during working time.

**Section 9**      Union Leave. At any given time, and upon providing ninety (90) days' notice to the Hospital, one (1) employee covered by this Agreement shall be entitled to an unpaid leave to work for the Union for a period of up to one (1) year. If the employee does not return to work after the leave period expires, the employee shall be considered as to have resigned their employment. The length of the leave may be extended by mutual agreement. The employee shall continue to accrue seniority during Union Leave.

Case ID: 250700568

Requests for additional employees to be off for Union leave may be granted at the discretion of the Employer.

## ARTICLE 28 - NO STRIKE/NO LOCKOUT

**Section 1**      During the life of this Agreement including any extension hereof, the Union, for and on behalf of its officers, agents and the employees covered by this Agreement, agrees and promises that neither it nor they (officers, agents and the employees covered by this Agreement) will directly or indirectly authorize, cause, encourage, assist, condone, sanction or participate in any way in any strike (whether it be economic, unfair labor practice, sympathy or of any other type whatsoever), slowdown, walkout, sit-down, picketing, stoppage, interruption or delay of work, leafletting, or to non-bargaining unit members, or boycott, whether same be of a primary or secondary nature.

**Section 2**      The term "strike" shall include a failure to report for work because of a primary or secondary picket line at the Hospital's premises, whether established by this or any other labor organization.

**Section 3**      The Hospital agrees that it will not to engage in a lockout, as defined herein, of bargaining unit employees during the period of this Agreement. A lockout is hereby defined under this Agreement to mean the withholding of work from bargaining unit employees by the Employer in order to obtain concessions from them and their Union with respect to their wages, hours, or working conditions. A layoff, reduction in force (including downsizing or rightsizing), temporary or permanent closing of any facility, department or unit, or discontinuance of any Hospital functions or operations by the Hospital because it determined that it is, for any reason, in its best interests.

**Section 4**      The Hospital shall have the unqualified right to discharge or discipline any or all employees who engage in any conduct in violation of this Article. The Hospital shall also have the unqualified right to determine the or degree of discipline, for each individual and such shall not be subject to the Grievance and Arbitration provisions of this Agreement, except for the right of the employee and/or the Union to grieve the issue of whether the employees so discharged or otherwise disciplined actually the employees so discharged or otherwise disciplined actually participated in the conduct in violation of this Article.

**Section 5**      Any claim, action or suit for damages resulting from the Union's violation of this Article shall not be subject to the Grievance and Arbitration provisions of this Agreement, except on the issue of employee participation referenced in Section 4 above.

**Section 6**      The Hospital shall be entitled to seek an injunction for any alleged violation of this Article.

**Section 7**      Should a strike, including sympathy strike, slowdown, boycott whether same be of primary or secondary nature, or stoppage of work occur, the Union immediately upon learning of the incident/conduct, shall:

Case ID: 250700568

a.     Notify the Hospital, in writing that such conduct and/or activities by the employees or others has not been called or sanctioned by the Union, with a copy of such notification posted on all of the Union's bulletin boards;

b.     Notify the employees in writing, and, whenever possible orally, both individually and by posting notices at appropriate locations, including at the Union's local office, if applicable, of its disapproval and disavowal of such conduct and action(s), and simultaneously instruct such employees that they must immediately:

1.     Cease and desist from any and all prohibited conduct and action(s); and

2.     Offer in writing to the Hospital to return to, work immediately or face dismissal;

c.     Immediately publicly disavow and condemn such conduct, activities and/or actions by the employees and any others who have joined them.

**Section 8**     The Hospital has the right to file a grievance under Article 20 Grievance and Arbitration with the Union for any conduct or actions.

## ARTICLE 29 - LABOR MANAGEMENT COMMITTEE

**Section 1**     The parties agree to institute a Labor Management Committee ("the Committee") which shall be comprised of up to four (4) representatives each from the Union and the Hospital. The Union will comprise their Committee of three (3) bargaining unit employees and one (1) Union Staff Representative. The Committee shall meet monthly to discuss matters or issues of mutual concern, or which concern one party or the other, and which both agree are relevant to the appropriate functions of the Labor Management Committee. The frequency of the meetings may be changed by mutual agreement.  The Committee shall not be a forum for the negotiation of new terms or conditions of employment under the Agreement, nor for the negotiations of a new contract or to amend the current Agreement. Meetings shall be scheduled for one (1) hour.

**Section 2**     The Committee shall meet pursuant to its own rules.

**Section 3**     Each party shall submit a written agenda to the other party no less than five (5) calendar days in advance of any regularly scheduled Committee meeting. If either party requests a special Committee meeting, it shall make such a request in writing at least ten (10) calendar days in advance of its requested date for the Committee meeting and shall include a proposed agenda. The other party shall then respond within five (5) calendar days after its receipt of the request for the special Committee meeting and proposed agenda, either by agreeing to both the meeting date/time and the proposed agenda, or by such other response as it deems appropriate.

**Section 4**     The meetings shall not be used as a substitute for the Grievance and/or Arbitration Procedure of this Agreement. The Hospital Representatives shall not be required to discuss circumstances that could be processed under the Grievance Procedure, nor grievances which have been filed or that are pending at any step of the Grievance Procedure.

Case ID: 250700568

**Section 5**     If the Hospital schedules the Labor-Management Committee meeting during an attendee's working time, he/she will be paid for regular (straight time) hours missed to attend the meeting.

## ARTICLE 30 - SEPARABILITY AND SAVINGS

**Section 1**     In the event that any provision of this Agreement shall, at any time, be declared invalid or void by a final decision and/or order of any court of competent jurisdiction or by Federal or State statute or legislation which is effectuated or enacted subsequent to the effective date of this Agreement, such decision/order, statute or legislative enactment shall not invalidate the entire Agreement, it being the express intention of the parties hereto that all other provisions not declared invalid or void shall remain in full force and effect.

**Section 2**     In the event that any such court decision/order, statute or legislative enactment shall have the effect of invalidating or voiding any provision of this Agreement, the parties hereto shall meet solely for the purpose of negotiating with respect to the matter covered by the provisions which may have been so declared invalid or void, but such negotiation shall not provide the parties with the rights to respectively, engage in a strike or lockout in the event of impasse over that provision, except in accordance with their respective rights to do so in accordance with the Act and this Agreement at the fixed conclusion of this Agreement set forth in Article 33 — Duration, hereof.

## ARTICLE 31 - SUCCESSORSHIP

In the event of the sale, transfer, lease, merger, or other divestment of the Hospital, the sale agreement will require the Buyer to staff bargaining unit positions by offering employment to employees in the affected classifications who are in good standing, meaning that they do not have any active discipline at the level of a suspension or above, at their then-current wage rate. The Buyer shall assume the accrued, unused vacation balances of such hired employees. Employees not hired by the Buyer or who decline an offer of employment shall be paid their accrued, unused vacation.

The sale agreement will additionally require the Buyer to assume the terms and conditions of this Collective Bargaining Agreement and recognize SEIU Healthcare PA as the exclusive collective bargaining representative for those employees covered by this Agreement. The Buyer will  be permitted to implement its own Healthcare, Paid Time Off, and Retirement structures, provided however that the Union will be provided 60 days' notice and the opportunity to meet and discuss any intended changes.

Within 20 days after a definitive Agreement of Sale is executed, the Hospital will give the Union notice of the sale by providing a copy of the provisions in the sale agreement that require the continued employment of staff, recognition of the Union as exclusive bargaining unit representative, and assumption of this Collective Bargaining Agreement.

## ARTICLE 32 - ENTIRE AGREEMENT

**Section 1**     This Agreement constitutes the full, complete and final understanding and agreement of the parties. The parties acknowledge that, during the negotiations that resulted in this

Case ID: 250700568

Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from collective bargaining. The parties voluntarily and unqualifiedly waive the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter whether or not referred to or covered in this Agreement, even though such subject matter may or may not have been within the knowledge or contemplation of either or both parties at the time that this Agreement was negotiated or signed.

**Section 2**     The Hospital shall not be bound by anything not expressed in writing herein and may, from time to time, modify any term or condition of employment, policy or past practice not set forth in this Agreement, subject to the following prior to implementation:

a.     The Hospital shall notify the Union of any such new or revised policy or rule and provide to the Union copies of any such-new or revised policy or rule at least ten (10) calendar days in advance.

b.     The Union may, within ten (10) calendar days after its receipt of said policy or rule, request to meet with the Hospital and to discuss same with the Hospital, in which case the Hospital shall provide one or more dates to the Union that are within five (5) days from its receipt of the Union's timely request, to meet with the Union to discuss the policy or rule. The Union shall act promptly and diligently with regard to any such "meet and discuss" and under no circumstances shall the "meet and discuss" process be protracted or become excessive, including that the number of meetings held and timing for such meetings shall be limited.

c.     Engage in effects bargaining if requested by the Union.

**Section 3**     The parties' authorized bargaining representatives may, by mutual written agreement, subsequently enter into a supplemental Agreement. Such Agreement must be in writing, executed by the parties.

## **ARTICLE 33 – DURATION**

**Section 1**     This Agreement shall go into effect upon the latter of the Closing of the acquisition and ratification, and shall continue in full force and effect until 11:59 p.m. on January 31, 2025 and thereafter from year to year unless either party gives written notice to the other ninety (90) days prior to the expiration date or of any succeeding yearly expiration date of a desire to negotiate with respect to the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the parties hereto, intend to be legally bound, and sign their hands and seals the date first above written.

SEIU Healthcare Pennsylvania                    Chestnut Hill Hospital

_____        _____

For the Union                                            For the Hospital

_____        _____

Date                                                        Date

Case ID: 250700568

# APPENDIX A – MINIMUM WAGE RATES

| Job Title | 2023 Min Hire Rate |
|---|---|
| Card NonInvas Tech I EKG | $20.60 |
| Card NonInvas Tech II EKG | $20.60 |
| ER Tech | $17.25 |
| Lab Aide | $16.50 |
| Mental Health Worker I | $16.60 |
| Mental Health Worker II | $18.72 |
| Monitor Tech | $16.50 |
| Nurse Asst | $16.50 |
| Nurse Asst Cert (CNA) | $16.50 |
| OR Central Supply Tech I | $17.33 |
| Patient Care Technician | $16.50 |
| Patient Transporter | $16.50 |
| Phlebotomist | $16.50 |
| Receptionist | $16.50 |
| Sterile Process Tech I | $16.81 |
| Unit Support Coordinator | $16.50 |

| Job Title | 2024 Min Hire Rate |
|---|---|
| Card NonInvas Tech I EKG | $20.60 |
| Card NonInvas Tech II EKG | $20.60 |
| ER Tech | $17.50 |
| Lab Aide | $17.50 |
| Mental Health Worker I | $17.50 |
| Mental Health Worker II | $18.72 |
| Monitor Tech | $17.50 |
| Nurse Asst | $17.50 |
| Nurse Asst Cert (CNA) | $17.50 |
| OR Central Supply Tech I | $17.50 |
| Patient Care Technician | $17.50 |
| Patient Transporter | $17.50 |
| Phlebotomist | $17.50 |
| Receptionist | $17.50 |
| Sterile Process Tech I | $17.50 |
| Unit Support Coordinator | $17.50 |

Case ID: 250700568

# APPENDIX B -GRIEVANCE FORM

Chapter_____

Grievant_____ Phone_____

Department_____ Classification_____

Delegate_____ Date Filed_____

Statement of Grievance

_____

_____

_____

Remedy Sought

_____

_____

Received by Supervisor

_____ Date_____

Step One Response

_____

_____

Received by Union Rep_____ Date_____

Is Answer Satisfactory?        Yes      No

Date Filed to Step Two_____

-------------------------------------------------------------------------------------------------

Received by Dept. Head_____ Date_____

Step Two Response

_____

_____

Is Answer Satisfactory?        Yes      No

Date Filed to Step Three _____

-------------------------------------------------------------------------------------------------

Received by HR _____ Date_____

Step Three Response

_____

_____

Is Answer Satisfactory?        Yes      No

Arbitrate?        Yes      No        Date Filed to Arbitration_____

Case ID: 250700568

## Attendance and Lateness Policy

**REFERENCES:**

CORRECTIVE ACTION/DISCIPLINE POLICY #950.544

AUTOMATED TIME CLOCK USAGE POLICY #950.563

HOURS OF WORK POLICY #950.550

USE OF PAID TIME OFF POLICY #950.954

FAMILY AND MEDICAL LEAVE POLICY #950.554

MISCELLANEOUS LEAVES POLICY #950.585

LEAVE RELATED TO DOMESTIC VIOLENCE, SEXUAL ASSAULT OR STALKING #950.579

MILITARY LEAVE POLICY #950.586

REASONABLE ACCOMMODATION POLICY #950.587

A.    **BACKGROUND**

Good attendance is an essential element of good patient care and teamwork. In order for the Hospital to provide high quality services, employees must come to work as scheduled. This means reporting to work on their scheduled days and arriving to work on time. Frequent call-outs and lateness interfere with good patient care and negatively reflect upon our core values of respect, service and quality to patients and to each other.

The Hospital recognizes that employees will occasionally experience illness or will arrive to work late due to unexpected personal circumstances. This policy attempts to balance patient care and employee concerns. Employees who are frequently absent or who regularly are tardy in reporting for work should expect to receive corrective action up to and including termination.

B.    **DEFINITIONS**

**Section 1**    ABSENCE: Absences fall into two categories; **scheduled** and **unscheduled**.

a.    A **scheduled** absence, such as vacation or personal time, is an absence requested and approved by the employee's supervisor/manager in advance of the requested time off.

b.    An **unscheduled** absence is a day when an employee calls out without prior approval, regardless of the length of the shift an employee works and regardless of whether a request has been made. Call outs for a regularly scheduled shift or for a pre-scheduled overtime or extra shift are considered unscheduled absences.

36    Case ID: 250700568

**Section 2**      EARLY QUIT: Instances where the employee comes to work but leaves before the end of the shift without prior approval from their supervisor/manager.

**Section 3**      OCCURRENCES: Unscheduled absences, latenesses and early quits that are not protected under section IV. D. of this policy, will be documented as "occurrences" and will be considered for the purposes of corrective action under this policy.

**Section 4**      LATENESS: Arriving to work after the start of the scheduled shift.

**Section 5**      NO CALL/NO SHOW: A no call/no show for work means the employee is scheduled to work and does not come to work or call out in accordance with departmental procedures.

**Section 6**      JOB ABANDONMENT: Job abandonment occurs when an employee does not report to work as scheduled. The following events are examples of job abandonment:

a.      Consecutive unscheduled days off in excess of three working days without an approved leave (i.e. FMLA, vacation, personal leave).

b.      Failure to return to work on the scheduled return to work date following a leave of absence.

c.      An unjustifiable instance of no call/no show.

d.      When an employee leaves their physical job location unexpectedly without authorization or notice.

**Section 7**      TIME WORKED RECORDS

Nonexempt employees are required to follow established guidelines for recording their actual hours worked. A pattern of noncompliance with the procedures set forth in the TUHS Automated Time Clock Usage Policy #950.563 may subject the employee to discipline in accordance with the TUHS Corrective Action Policy 950.544.

C.      **COUNTING OCCURRENCES**

**Section 1**      ABSENCES

a.      Scheduled days off are not included for purposes of corrective action under this policy.

b.      Unless otherwise protected by applicable federal, state or local laws or excused by this policy, any unscheduled absence of one day counts as one occurrence.

c.      An unscheduled absence of multiple consecutive days will count as two (2) occurrences, regardless of the length of the absence.

d.      Unscheduled absence that occurs in conjunction with a holiday (i.e., absence on the holiday, the scheduled workday before, or the scheduled workday following a holiday) or in conjunction with a pre-approved paid time off day will be counted as two (2) occurrences.

Case ID: 250700568

e.     Unscheduled absences that occur in conjunction with a previously denied personal or vacation day will also be counted as two occurrences under this policy. Such unauthorized absences may also subject employees to corrective action under the TUHS Corrective Action/Discipline policy unless medical documentation is provided to substantiate the need for the absence.

f.     All unscheduled absences are counted beginning with the first day of employment and are included for the purposes of corrective action.

g.     Unscheduled absences may be recorded as scheduled only if the employee's manager is able to excuse the employee's absence based on departmental staffing levels and the employee is able to take a paid day off.

h.     Some employees may be able to voluntarily find a substitute for their unscheduled absence. If approved by their manager, such absences will be recorded as scheduled absences so long as the employee has a sufficient amount of applicable paid time off to cover their absence.

### **Section 2**     EARLY QUITS

a.     Each early quit counts as half an occurrence.

b.     Employees who take unauthorized breaks by leaving for break early, returning from break late or otherwise taking more breaks than has been allowed (i.e., spending portions of one's workday making and taking personal calls and checking social media), are subject to discipline under the TUHS Corrective Action/Discipline Policy.

### **Section 3**     LATENESS

a.     All employees are expected to report to work at their regular starting time.

b.     Subject to subsection d (below), each lateness counts as half an occurrence.

c.     Incidents of lateness are counted beginning with the first day of employment.

d.     Employees are permitted to clock in up to seven (7) minutes before their scheduled shift so that they may report to their workstations on time. Additionally, in the event that occasional delays occur, employees may clock in within seven minutes after their scheduled start time without receiving discipline under this policy. This seven-minute grace period does not permit employees to incur unauthorized overtime by clocking in more than seven minutes before their scheduled shift. Employees who incur unauthorized overtime costs may be disciplined under the TUHS Automated Time Clock Usage Policy #950.563 and the TUHS Corrective Action/Discipline Policy#950.544.

e.     In some departments, when an employee is going to be late, they may be informed by management not to report to work that day. When this occurs, the employee's absence will count as an occurrence of unscheduled absence. The employee is to use personal or vacation time, if applicable, in these instances.

Case ID: 250700568

**Section 4**     EXCEPTIONS: Occurrences **will not** accumulate for the following absences:

a.     Time off protected by federal, state and local laws (*i.e.*, ADA, FMLA leave, jury duty)

b.     Scheduled absences

c.     Lack of work

d.     Death of a family member (as defined in the TUHS Misc. Leaves Policy)

e.     Military duty

f.     Medical appointments or absence due to workplace injury or illness

g.     When employees voluntarily find a substitute to cover their unscheduled absence (subject to management approval)

NOTE: Supervisors/managers and/or HR may request documentation in any of these situations in accordance with the applicable TUHS policies.

| COUNTING OCCURRENCES | |
|---|---|
| 1 day of unscheduled absence (not taken in connection with a holiday or paid time off, whether approved or denied) | 1 occurrence |
| 2 or more days of unscheduled absences | 2 occurrences |
| Unscheduled absences that occurs in conjunction with a holiday, pre-approved paid time off day or a previously denied personal or vacation day | 2 occurrences |
| 1 early quit | $^1/_2$ occurrence |
| 1 lateness | $^1/_2$ occurrence |

**Section 5**     RECORDKEEPING

a.     Attendance records will be maintained on a "rolling twelve-month" basis, starting with the employee's first occurrence (as defined in the policy). Occurrences will expire twelve (12) months from the date of the occurrence. For example, an occurrence which is recorded in January will be removed from the employee's record on the one-year anniversary of the occurrence.

b.     Corrective action for employees hired to work 20 hours per week or more will occur as follows:

1.     **Written warning**: Four occurrences will result in a "Written Warning." The rolling twelve-month period starts with the employee's first recorded occurrence.

2.     **Suspension**: Two additional occurrences **in the same twelve-month period** will result in a "One Day Suspension."

Case ID: 250700568

3.    **Termination**: Two additional occurrences to the above **in the same twelve-month period** will result in "Termination.

D.    **PROCEDURES**

**Section 1**    Employees are urged to schedule days off in advance in accordance with departmental policies and protocols. Managers are urged to accommodate those requests, as much as possible. While not all requests can be met, managers should make a sincere effort to accommodate timely requests for time off.

**Section 2**    Employees may at times call out due to health or personal matters. Sick, personal and vacation days are provided for these purposes. Employees must follow proper departmental call out procedures to ensure sufficient notice is provided for the department to arrange for coverage. Management is responsible for informing staff of acceptable methods of notification. If an absence lasts more than one day, employees must contact their department each day to update and inform their supervisor/manager. In some cases, a note from the employee's health care provider may be required prior to the employee's return to work. **Managers and employees should consult with Absence Management regarding absences lasting more than three working days.** Failure to follow departmental rules or procedures may be considered insubordination and may result in discipline under the TUHS Corrective Action Policy #950.544.

**Section 3**    In instances of a declared emergency, such as inclement weather, if an hourly paid employee does not come to work as scheduled they will not be paid for the day unless staffing is sufficient to allow the employee to take the day off. However, if the unscheduled absence is due to illness the employee will be allowed to use paid sick leave if appropriate documentation (such as a note from the employee's heath care provider) is submitted to the supervisor/ manager, if requested. Upon HR approval, such absences may not count as an occurrence for the purpose of this policy.

**Section 4**    Incidents accumulate on the basis of a "rolling twelve month" period in accordance with section IV. E. of this policy.

**Section 5**    With the exception of habitual offenders (as defined in Section V.H. below), corrective action for absenteeism will typically occur in sequence. An employee will receive a written warning followed by suspension without pay before being terminated.

**Section 6**    Consecutive unscheduled days off in excess of three (3) working days will be considered as job abandonment and result in termination unless the employee has applied for and been granted an approved leave (i.e. FMLA, vacation, personal leave).

**Section 7**    For employees hired to work 20 hours or more per week, termination occurs once an employee accumulates 8 occurrences. Employees who are scheduled to work less than 20 hours a week will be terminated when they accumulate 5 occurrences.

**Section 8**    Employees receiving corrective action under this policy are expected to improve their attendance and punctuality. For that reason, employees who are habitually late or absent will not receive the benefit of an automatic clearing of points. Specifically, although occurrences will be removed from an employee's record after twelve months, employee who have accumulated at

Case ID: 250700568

least three attendance related write ups in an eighteen month period are subject to termination of employment without proceeding through the remaining steps of progressive discipline.

## APPLYING CORRECTIVE ACTION FOR ATTENDANCE, LATENESS AND EARLY QUITS

| Action Taken | Employees Hired for 20 hrs/wk or more | Employees Hired for Less Than 20 Hrs/Wk | Prior Action Required |
|---|---|---|---|
| Written Warning | 4 occurrences | 2 occurrences | |
| One (1) Day Suspension without pay | 6 occurrences | 3 occurrences | A written warning has been previously issued within the last twelve months. |
| Termination | 8 occurrences | 5 occurrences | A suspension has been previously issued in the last twelve months. |

E. **PROCEDURES FOR EMPLOYEES IN THEIR PROBATIONARY (INTRODUCTORY) PERIOD**

**Section 1**     During the probationary (introductory) period, employees are also expected to maintain good attendance. However, corrective action requirements of this policy do not apply during this period. That means that probationary employees may receive no warning when their absences and/or lateness are excessive prior to termination. After the employee passes their introductory period, occurrences accumulated during the introductory period will be counted in accordance with this policy.

F. **DOCUMENTATION**

**Section 1**     Managers should use the "Corrective Action/Discipline Report" form to document discussions and any corrective action steps taken in accordance with this policy.

Case ID: 250700568

**\*\*THIS FORM AND THE TA MUST BE TURNED IN WITHIN 24 HOURS OF RATIFICATION\*\***
**SEIU HEALTHCARE PA CONTRACT FINALIZATION FORM**

**EMPLOYER: Chestnut Hill Hospital**

**STAFF PERSON RESPONSIBLE: Neal Manning**

**DATE TA WAS HANDED IN TO OFFICE: 2023-01-05**

1. Date of Contract Ratification
   2023-01-01
2. Date Bargaining Unit List handed in to Office
   2023-01-01
3. Initial Draft of the Contract to be completed by
   Organizer
4. Initial Draft to be sent to
   TA document contains entirety of new contract
5. Printing of the Contract to be completed by
   Union
6. Cost of printing
   Union pays total cost
7. Number of copies for the employer
   undefined
8. Color of the Contract Cover?
   Purple
9. Turnover rate of the facility so that we know how many contracts need to be ordered.
   20
10. Mailing/Distribution Instructions - who should copies be sent to for distribution?
    Kilynn Lunsford
11. What is the new expiration date in the Contract?
    2025-01-31
12. Are there any reopeners in the new Contract? If so, what are the dates and what Article in the Contract covers them?
    No